# SUPREME COURT,
## STATE OF KANSAS.

## JULY TERM, 1905.

*PRESENT:*

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ADRIAN L. GREENE,
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. CLARK A. SMITH,      } JUSTICES.
HON. SILAS W. PORTER,
HON. CHARLES B. GRAVES,*

B. B. CLARK v. THE TORONTO BANK *et al.*

No. 14,099.   (82 Pac. 582.)

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Draft—Fund Not Assigned.* Ordinarily the issuance of a bank draft does not, prior to its acceptance, operate as an assignment of a part of the fund against which it is drawn.

2. —— *Draft Issued by an Insolvent Bank — Rights of Holder.* Where a bank fails and passes into the hands of a receiver after it has issued a draft upon a correspondent bank in which it has funds on deposit, and the drawee has notice of the receivership before the draft is presented for payment, the title to such deposit passes to the receiver, and the holder of the draft, in the absence of any special circumstances, is entitled to no priority over other creditors of the failed bank.

Error from Woodson district court; OSCAR FOUST, judge. Opinion filed October 7, 1905. Affirmed.

*Appointed August 21, 1905, by Governor EDWARD W. HOCH, to succeed the Honorable EDWIN W. CUNNINGHAM, who died August 16, 1905.

1—72 KAN.

*S. C. Holmes,* for plaintiff in error.

*W. S. Marlin,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: B. B. Clark, a resident of Iowa, sold some cattle in Woodson county, Kansas, through an agent, who accepted in payment a check drawn on the Toronto Bank, in that county. The agent presented the check at the bank, and upon his request was given in payment a draft payable to the order of his principal, drawn by the Toronto Bank upon a Kansas City bank against a fund then on deposit there to its credit. Shortly afterward the Toronto Bank was closed by the bank commissioner, and in due course of time a receiver was appointed. The draft was presented for payment to the Kansas City bank, which, having notice of the failure of the issuing bank, refused for that reason to pay it. Clark, the holder of the draft, brought an action against the receiver, asserting the right to recover from him the full amount of the draft irrespective of the amount the failed bank might be able to pay its general creditors. He was denied relief and now prosecutes error.

In the petition an attempt was made to give the transaction described the color of a special deposit, or a contract for the transferring of a fund in specie from Toronto to the plaintiff's home in Iowa. As clearly appears from the statement made, however, the facts will not bear that construction. The transaction was the ordinary one of the purchase of a draft for convenience in the remitting of money, and the giving to it of a different name cannot alter its essential character. In a stipulation regarding the facts upon which, together with the plaintiff's evidence, the case was submitted, it was stated that the plaintiff was at no time a creditor of the failed bank, but this statement cannot overcome the effect of the specific facts admitted and shown, if inconsistent with them. It must be interpreted as meaning either that the

plaintiff was not a creditor of the bank, except so far as that relation was created by the facts already recited in detail, or as a mere conclusion of law, to be disregarded by the court if found to be incorrect.

An effort is also made to build up a right to have the money paid by plaintiff to the Toronto Bank treated as a trust fund, upon the theory that it was a deposit unlawfully received by the officers of the bank while it was insolvent and while they knew of its insolvency. If the facts in this case are otherwise sufficient to bring it within the principle invoked, they fall short in this: It is shown that the bank was insolvent when the draft was purchased, but not that the officers were cognizant of the fact; and there is an entire failure of any showing that the money paid for the draft ever reached the hands of the receiver or that the assets in his hands were increased in any way by the transaction.

The plaintiff's action must therefore fail unless it can be said that the issuance of the draft operated to transfer to him the equitable title to so much of the money of the Toronto Bank then on deposit in the Kansas City bank as it called for, in which case the receiver, who succeeded only to the rights of the failed bank and was entitled only to its assets, could have no valid claim upon that portion of the deposit. This theory has received the support of a number of courts and is the settled law in several of the states. It is adopted by Mr. Daniel in his work on Negotiable Instruments (vol. 2, 5th ed., § 1643). Nevertheless, the great weight of authority is to the effect that an unaccepted check or draft in the usual form does not, in the absence of exceptional circumstances, amount to an assignment, in law or equity, of any part of the drawer's deposit. (5 Cyc. 536; 2 A. & E. Encycl. of L. 1064; 4 Cent. Dig. cc. 1247-1250.) This rule has frequently been enforced in controversies between the holder of a draft and the assignee or receiver of its insolvent drawer. (*Fourth Street Bank v. Yardley*, 165

U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855; *Covert v. Rhodes,* 48 Ohio St. 66, 27 N. E. 94, and cases cited; *Attorney-gen'l v. Continental Life Ins. Co.,* 71 N. Y. 325, 27 Am. Rep. 55; *Aikin v. Jones,* 93 Tenn. 353, 27 S. W. 669, 25 L. R. A. 523, 42 Am. St. Rep. 921; *Harrison, Receiver, v. Wright et al.,* 100 Ind. 515, 58 Am. Rep. 805; *Guthrie National Bank v. Gill,* 6 Okla. 560, 54 Pac. 434; *Reviere v. Chambliss,* 120 Ga. 714, 48 S. E. 122.) It has the sanction of so great a preponderance of the authorities that we have no hesitation in accepting it.

A uniformity of decision in different jurisdictions upon matters of commercial usage is especially to be desired, and the question here presented, being of that character, affords a strong argument in favor of a solution that shall be in harmony with the generally prevailing doctrine. It may be added that since this action arose the rule referred to has been incorporated in the Kansas statute, being found in section 196 of the negotiable-instruments act (Laws 1905, ch. 310). The general adoption of substantially the same act, in pursuance of an organized effort to secure uniformity upon the subject, may finally make the rule of universal application.

No exceptional circumstances being shown in this case, it falls within the operation of the principle stated and the plaintiff cannot recover. The judgment is affirmed.

All the Justices concurring.