No. 25,014.

The Chetopa State Bank, *Appellee*, v. Farmers & Merchants State Bank and B. V. Curry, *Receiver*, (Lewis Wilson, Substituted,) *Appellants*.

SYLLABUS BY THE·COURT.

1. Insolvent Bank—*Facts to Be Established Before a Claim Can Be Allowed as a Preferred Claim.* Before a claim can be allowed as a preferred claim against the receiver of an insolvent bank, it is necessary to establish, first, that the claim in question is a trust fund, and, second, that the fund in some form was a part of the assets of the bank which passed into the hands of the receiver.

2. Same—*Evidence Establishes Relation of Debtor and Creditor and Not That of Principal and Agent or Trustee—Claim Not Entitled to a Preference.* The Chetopa State Bank received from its Kansas City correspondent checks aggregating $2,800, drawn upon the various banks at Chetopa, and sent its draft in payment therefor. In clearing that day it held checks drawn upon the F. & M. State Bank, some of which it had received that morning from its Kansas City correspondent and some of which it had taken over its own counter during the day, amounting to $2,000 (in excess of checks held by the F. & M. State Bank against it), and took in payment the draft of the F. & M. State Bank drawn on its Kansas City correspondent. The day this draft was presented for payment at Kansas City the bank commissioner took charge of the F. & M. State Bank, closed its doors and a receiver was appointed. The draft was protested. In an action by the Chetopa State Bank against the receiver, *held*, that the relation created between the F. & M. State Bank and the Chetopa State Bank by the issuance of the draft, was that of debtor and creditor and not that of principal and agent or trustee and *cestui que* trust, and that plaintiff is not entitled to a preference.

Appeal from Labette district court; Elmer C. Clark, judge. Opinion filed October 6, 1923. Reversed.

*Elmer W. Columbia*, of Oswego, for the appellants.
*Archie D. Neale*, of Chetopa, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action against a receiver of a state bank for the amount of a draft issued by the bank before the receiver was appointed and to have the same declared a preferred lien upon the assets in the hands of the receiver. There was a trial to the court, which rendered judgment for plaintiff as prayed. The defendant has appealed and concedes that the claim should be allowed, but objects to that part of the judgment making it a preferred claim.

There is not much controversy about the facts. At the time the draft in question was issued there were three banks in Chetopa,— a National Bank, the Chetopa State Bank, plaintiff herein, and the Farmers & Merchants State Bank, for which a receiver was later appointed, defendant herein. On September 13, 1922, the Chetopa State Bank received from its Kansas City correspondent, the Commerce Trust Company, checks aggregating $2,801.01, which had been drawn upon the Chetopa banks, and it sent to the Commerce Trust Company in payment therefor, its draft for that amount. Some of these checks, the exact amount is not shown, had been drawn upon the Farmers & Merchants State Bank. On the same day representatives of the three banks met at the National Bank for the purpose of clearing checks each had upon the other. The representative of the Chetopa State Bank had with him all checks which that bank had which had been drawn upon the Farmers & Merchants State Bank. Some of these were among the checks received by it that morning from its Kansas City correspondent and some of them were checks which it had taken in over its own counter during the day. The representative of the Farmers & Merchants State Bank had with him such checks as that bank had which had been drawn upon the Chetopa State Bank. In clearing the checks there was a balance due the Chetopa State Bank from the Farmers & Merchants State Bank of $2,039.81, and the Farmers & Merchants State Bank gave the Chetopa State Bank a draft for that amount, drawn on its Kansas City correspondent, the Commonwealth National Bank. Through some oversight this draft was not completed by protecting the same with the protectograph. It was sent to Kansas City, but because of its incomplete condition was returned for correction and was corrected by the Farmers

& Merchants State Bank and redelivered to the Chetopa State Bank and then presented for payment to the Commonwealth National Bank on September 18, and was on that date protested for nonpayment. The Farmers & Merchants State Bank was taken charge of by the bank commissioner on September 18, its doors closed and later a receiver was appointed. The account of the Farmers & Merchants State Bank with its Kansas City correspondent, the Commonwealth National Bank, had been overdrawn continuously for several months, but the banks continued to do business with each other and the Commonwealth National Bank always paid the drafts of the Farmers & Merchants State Bank until the 18th of September, when the draft in question was presented. There is evidence tending to show that the Farmers & Merchants State Bank was insolvent prior to the time it was taken charge of by the bank commissioner, but there is no evidence to indicate that even if it was insolvent the officers of the bank knew that fact on the date the draft in question was issued, and it continued as a going concern, met and paid its obligations up until taken possession of by the bank commissioner.

Before a claim can be allowed as a preferred claim against a receiver of an insolvent bank it is necessary to establish, first, that the claim in question is a trust fund and, second, that the fund in question, in some form, became a part of the assets of the bank which came into the hands of the receiver. Many of the cases which have been considered by this court have involved the second question only. Here we are concerned with the first question, that is, did the draft issued by the Farmers & Merchants State Bank, under the circumstances above stated, constitute a trust fund? In other words, did the circumstances create the relation between the parties of trustee and a *cestui que* trust, or the relation of debtor and creditor? The appellee contends that the former relation was created. The appellant contends that the latter relation was created and this is the real question for decision.

Appellee contends that in presenting the checks for clearing it was acting as the agent of its Kansas City correspondent, but this cannot be true for the reason, first, that some of the checks which it presented for clearing were received over its own counter, and did not come from its Kansas City correspondent, and, second, it paid its Kansas City correspondent the amount of all the checks received

30—114 Kan.

from it and thereby became the absolute owner of them, just as any one becomes the owner of a check endorsed to him for which he paid value. So, the cases cited by counsel where the right to a preference turns upon the relation of principal and agent, are not in point.

Appellee contends that the relation of trustee and *cestui que* trust was created by the transaction by reason of the fact that the Farmers & Merchants State Bank was insolvent at the time it issued the draft and for the further reason that its account was then overdrawn with the Commonwealth National Bank; that the issuing of the draft was a violation of, and a crime under sections 3471-3474 of the General Statutes of 1915, commonly known as the "bad check law," and under section 2, chapter 71 of the Laws of 1921, which makes it a felony for the president, cashier or assistant cashier of a bank to draw a draft with intent to injure or defraud any person or corporation. The insolvency of the bank would not create this relation unless the officers of the bank knew it to be insolvent, and that is not shown in this case. (*Widman v. Kellogg*, 22 N. Dak. 396, 133 N. W. 1020; *Whitcomb v. Carpenter*, 134 Iowa, 227, 111 N. W. 825; *St. Louis, etc., Rly. Co. v. Johnston*, 133 U. S. 566; *Peters Shoe Co. v. Murray*, 31 Tex. Civ. App. 259.)

The issuing of the draft would not be a violation of the bad check law simply because the account at the Kansas City bank was overdrawn. That statute is only violated when the person drawing the check does not have *cash* or *credit* sufficient to meet the check, and it was not shown in this case that the Farmers & Merchants State Bank did not have credit with its Kansas City correspondent for the payment of this draft. The fact that its account with the Kansas City correspondent had been overdrawn for several months and yet its Kansas City correspondent had paid its drafts from day to day is at least some evidence that it had a credit with its Kansas City correspondent to take care of this draft. It may be noted that it was not finally presented for payment until September 18, the date the bank commissioner took charge and closed the doors of the Farmers & Merchants State Bank. So the Commonwealth National Bank at Kansas City would have been justified in protesting the draft on that date, even though the Farmers & Merchants State Bank would have a sufficient balance to its credit to take care of it. Neither can the transaction be said to be a violation of section 2, of chapter 71 of the Laws of 1921, for there is nothing in the transaction to indicate that there was any intent on the part of the officers

of the Farmers & Merchants State Bank to injure or defraud the appellee, but, on the other hand, the transaction indicates that the draft was given in the ordinary course of business and with the full expectation that it would be paid.

A draft drawn by a bank upon another bank has the same status in law as a check drawn upon a bank by an individual. (McGee on Banks and Banking, 3d ed., p. 306; Michie on Banks and Banking, p. 1611.) This is not an action against the bank upon which the check is drawn, hence we are not concerned with the doctrine of whether or not a check drawn upon a bank has the effect of segregating the funds of the bank to the amount of the check, though that doctrine is well settled in this state. (*Clark v. Bank,* 72 Kan. 1, 82 Pac. 582; Gen. Stat. 1915, § 6717.) This is an action against the drawer of the draft and stands exactly in the same situation as would a suit against an individual who had drawn his check upon a bank.

In this case the Chetopa State Bank was the holder of checks drawn by various individuals upon the Farmers & Merchants State Bank. It presented these checks at the time of clearing for payment. It was in the same situation as though it had taken the checks direct to the Farmers & Merchants State Bank and there purchased a draft for them, or in the same situation as though it had purchased a draft from the Farmers & Merchants State Bank for cash. The great weight of authority is that under such circumstances the relation of debtor and creditor is created and not that of trustee and *cestui que trust.* In all, or nearly all, of the cases holding to the contrary some other element enters into it, as that of fraud or fiduciary relationship, which, as we have already seen, are not present in this case. The case is controlled by the principle announced in *Clark v. Bank,* 72 Kan. 1, 82 Pac. 582, where it was said:

"Where a bank fails and passes into the hands of a receiver after it has issued a draft upon a correspondent bank in which it has funds on deposit, and the drawee has notice of the receivership before the draft is presented for payment, the title to such deposit passes to the receiver, and the holder of the draft, in the absence of any special circumstances, is entitled to no priority over other creditors of the failed bank." (Syl. ¶ 2.)

In the notes on this question in 2 L. R. A., n. s., 83, where this case is reported, it is said that the principle announced is in accord with the weight of authority. (See, also, *Peters Shoe Co. v. Murray,* 31 Tex. Civ. App. 259; *Union National Bank v. Citizens Bank,* 153

Ind. 44; *Spiroplos v. Scandinavian-American Bank,* 116 Wash. 491; *Legniti v. M. & M. Nat. Bank,* 230 N. Y. 415; *Harrison v. Wright,* 100 Ind. 515; *Grammel v. Carmer,* 55 Mich. 201; *Jewett v. Yardley,* 81 Fed. 920; *American Ex. Co. v. Cosmopolitan Trust Co.,* 239 Mass. 249; *Beecher v. Cosmopolitan Trust Co.,* 239 Mass. 48; *Lamro Bank v. Bank of Winner,* 34 S. Dak. 417; *People v. M. & M. Bank,* 78 N. Y. 269.)

The case of *Tire & Rubber Co. v. Bank,* 109 Kan. 772, 204 Pac. 992, is cited as being opposed to the doctrine herein stated. In that case the Goodyear Tire & Rubber Co. of Akron, Ohio, held a trade acceptance, in effect a draft, payable to it, signed by Poell Bros. of Hanover, Kan. It was sent through a bank in Chicago to the Hanover State Bank with instructions to collect and remit. The Hanover State Bank accepted in payment the check of Poell Bros. drawn upon itself and undertook to remit the collection by sending its own cashier's check. It appears to have been conceded in the case that this constituted the relation of principal and agent between the Goodyear Tire & Rubber Co. and the Hanover State Bank, and therefore, that the money was a trust fund. The opinion is devoted exclusively to the question of whether or not the trust fund was one which became a part of the assets which passed into the hands of the receiver. Hence, the case is not controlling upon the question before us:

In the annotations on this case, where it is reported in 21 A. L. R. 677, 680, after citing *Lummus Cotton Gin Co. v. Walker,* 195 Ala. 552; *Stanley v. Green,* 205 Ala. 225; *Clark v. Chicago Title & Trust Co.,* 186 Ill. 440, holding that the issuance of a cashier's check creates the relation of debtor and creditor between the bank issuing it and the holder, it was said:

"As shown by the cases above reviewed, although few in number, in none of them does the court countenance the claim that the mere fact that a cashier's check had been issued, instead of some other form of evidence of the debt, entitles the holder thereof to a preference. In the absence of a statute to the contrary, the right to a preference depends, first, upon the existence of a trust relation, and, second, upon the ability to trace the funds. The existence of a trust relation seems to be assumed in the reported case, but whether that assumption rests upon the fact that a cashier's check was involved, or upon the other facts, is not clear."

The case will be reversed with directions to enter judgment allowing the claim of the plaintiff as a general creditor.