No. 27,350.

THE COLORADO & SOUTHERN RAILWAY COMPANY, *Appellee*, v. WILLIAM DOCKING, Receiver of THE AMERICAN STATE BANK, and THE RESERVE STATE BANK, *Appellants*.

(257 Pac. 743.)

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Insolvency—Preferred Claim—Cashier's Check Covering Collection.* Where a bank receives a draft for collection and return with instructions to remit by draft on Kansas City, makes the collection the same day through a local clearing house and immediately sends the bank sending the collection item a cashier's check covering the same, and the collecting bank fails the same day and the check is returned to the receiver of such bank, the relation of the collecting bank to the owner of the collection item is that of debtor and creditor and the item is not a trust fund.

2. SAME—*Insolvency—Preferred Claims—Transactions Made With Knowledge of Insolvency.* Where the above transaction took place while the bank was in an insolvent condition, being one of many other similar transactions taking place at the same time and as a usual and ordinary line of banking business, it is not such a fraudulent transaction as to make the collected item a trust fund, even if the officers of the bank knew of its insolvent condition.

Appeal from Sedgwick district court, division No. 1; J. EVERETT ALEXANDER, judge. Opinion filed July 9, 1927. Reversed.

*C. H. Brooks, Willard Brooks* and *Howard T. Fleeson,* all of Wichita, for the appellants.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton* and *W. E. Stanley,* all of Wichita, for the appellee; *J. L. Rice* and *E. B. Evans,* both of Denver, Colo., of counsel.

Banks and Banking, 7 C. J. pp. 616 n. 68, 751 n. 75, 77; 3 R. C. L. 557, 636; 20 A. L. R. 1208; 25 A. L. R. 728; 37 A. L. R. 620.

The opinion of the court was delivered by

HUTCHISON, J.:   This action was brought by the plaintiff after the failure of the American State Bank in Wichita and the appointment of a receiver, to establish a preferential claim against the receiver and against the Reserve State Bank, which purchased from the receiver some of the assets of the American State Bank.  The only defense in the case by the receiver and the Reserve State Bank was on the question of the claim being preferred, it being admitted that the plaintiff had a common claim against the receiver in the amount alleged.  A jury was empaneled, but upon making the admission just mentioned, during the course of the trial the jury was discharged and the case was tried to the court, who made extensive findings of fact and concluded the claim to be a preferential one and rendered judgment accordingly in favor of the plaintiff and against the defendant receiver and the Reserve State Bank, from which judgment the receiver and the Reserve State Bank appeal.

In June, 1923, the Kansas City, Mexico & Orient Railway Company was indebted to the Colorado & Southern Railway Company in the sum of $1,501, for which indebtedness the Colorado & Southern Railway Company drew its draft on the Orient Railway Company and deposited the draft in the Colorado National Bank, of Denver, Colo., for *collection and credit.*  The deposit slip issued by the Denver bank showed that credit·was given to the plaintiff conditionally, the bank reserving the right to charge back to the depositor all unpaid items or returns.  The Colorado bank on the same day in due course of business forwarded the item to the New England National Bank, of Kansas City, Mo., for *collection and credit,* which bank in due course forwarded the item to the Federal Reserve Bank, of Kansas City, Mo., for *collection and credit.*  On June 16, 1923, the Federal Reserve Bank in due course forwarded this item to the American State Bank, of Wichita, for *collection and returns.*  Some of the instructions given in the letter of transmittal were the following: "Do not remit for this collection unless it is actually paid." "Please remit by draft on Kansas City."  The draft was duly received by the American State Bank on June 18, 1923, and at 11 o'clock that day the said bank presented· it at the meeting of the Wichita clearing house, together with other items, and was given

credit for the full amount thereof on the settlement sheet of the clearing house, it being by previous arrangement of the Orient Railway Company cared for by the Fourth National Bank, of Wichita, and in such settlement the American State Bank was required to "put up" a difference of over $17,000, the amount of its debits exceeding the amount of this and other credits by that amount in that day's business. Upon receiving credit for this draft in this manner on June 18 at 11 o'clock, the cashier of the American State Bank immediately drew a cashier's check on itself payable to "ourselves" for the sum of more than $18,000 in payment of collections which it had received that day from the Federal Reserve Bank, which included the draft in question of $1,501. The American State Bank closed its doors at 3 o'clock on the afternoon of that day and never reopened. The cashier's check for more than $18,000 sent to the Federal Reserve Bank, not being indorsed by any of the officers of the American State Bank and the bank having failed before the check could be presented for payment, was returned to the deputy bank commissioner in charge of the American State Bank on June 19, and the receiver of said bank had said check in his hands at the time of the trial. A large share of the assets of the American State Bank were sold to the Reserve State Bank when it was organized. In the trial of the case it was admitted that the American State Bank was insolvent on June 18, 1923, and had been insolvent for one week prior thereto. Two of the findings of the court on this question are as follows:

"13. On June 18, 1923, The American State Bank was insolvent and had been in an insolvent condition for one week prior thereto."

"15. That the insolvency of the American State Bank was known to the officers of said bank on June 18, 1923, at the time it accepted the draft in question for collection."

There is only one question here for determination, and that is whether the $1,501 item so collected by the American State Bank and attempted to be remitted to the Federal Reserve Bank by the cashier's check was a preferred claim against the assets of the American State Bank and its receiver. Our court has frequently held that there are two distinct steps to be taken in reaching a decision as to whether a claim against the assets of an insolvent bank is entitled to be preferred:

"Before a claim can be allowed as a preferred claim against the receiver

of an insolvent bank, it is necessary to establish, first, that the claim in question is a trust fund; and, second, that the fund in some form was a part of the assets of the bank which passed into the hands of the receiver." (*State Bank v. State Bank*, 114 Kan. 463, syl. ¶ 1, 218 Pac. 1000. See, also, *Nelson v. Paxton, Receiver*, 113 Kan. 394, 214 Pac. 784.)

The same two steps are necessary where the fund becomes a trust fund on account of fraud or fraudulent inducement. (*Investment Co. v. Bank*, 98 Kan. 412, 158 Pac. 68; *Kirby v. Wait*, 120 Kan. 400, 243 Pac. 1080.) A fund will not necessarily become a trust fund simply because the assets reaching the hands of the receiver have been augmented by the transaction. This is simply a feature to be considered separately and apart from the first essential as to preference and after it has first been determined that the fund is a sacred or trust fund, either on account of the relationship of the parties to the transaction as principal and agent, debtor and creditor, or trustee and *cestui que trust*, or on account of the fraudulent conduct of the officers of the bank. Then in proper sequence arises the second question, Did the transaction augment the assets reaching the hands of the receiver? It can readily be seen that many a trust fund will fail of preference because it does not augment the assets reaching the hands of the receiver, and, on the other hand, many a case can exist where there is no question about the assets being augmented; but that can avail nothing toward a preference unless it has already been found to be a trust fund. In nearly all of the earlier cases cited in this connection only one of these elements was involved or considered, the trust fund feature was conceded, agency admitted, etc. Such cases afford only comparative help, whereas in this both elements are contested.

The draft in question in making its trip from Denver to Wichita via Kansas City, Mo., passed through several banks for collection and credit, and undoubtedly the relation of one to the other, up to and including the American State Bank, in turn was that of principal and agent, and that relation might still have been maintained had it not been for the order of the Federal Reserve Bank requiring remittance to be by draft on Kansas City. This interrupted that relationship by making the Wichita bank a debtor. This direction was disregarded to the extent of using a cashier's check instead of draft on Kansas City, which made the situation no better. Immediately, of necessity, the funds collected became a part of the funds

of the collecting bank and were mixed with its funds, thus losing for them any claim of being a special fund.

"The general rule is that the title to commercial paper received for collection by a bank and forwarded to its correspondent in the usual course of business does not vest in such correspondent. The relation between the two banks, as between the depositor and the forwarding bank, is that of principal and agent merely. The correspondent bank receives such paper as an agent for collection, and the title does not pass. When, however, the paper has once been collected by the correspondent bank, and it has received the proceeds therefor, the relation between the remitting bank and itself is changed from that of principal and agent to that of debtor and creditor, and title to such proceeds will, in the absence of an agreement to the contrary, vest in the correspondent bank. The banks are presumed to contract in view of the well-known and established custom of banks, when acting as collecting agents for other banks, or, indeed, for any customer, to put all collections made by them into the general fund of the bank, unless directed to make of them a special deposit, and use them from hour to hour and from day to day in the transaction of their current business." (3 R. C. L. 636.)

"As a general rule, the proceeds of paper collected by a bank becomes the property of the bank and a part of its general fund, and the bank becomes a debtor to the owner of the paper for the amount collected, less the charges for collection; and it follows that, on the insolvency of the collecting bank, there is no preference in favor of the owner of the paper or of a forwarding bank with respect to the proceeds." (7 C. J. 616.)

Both the texts state the rule in subsequent paragraphs to those above quoted as being different where the paper is deposited for collection only or for collection under express directions to collect and remit. Such express directions are more or less common where the bank is suspected of being in failing condition, and they usually designate remittance in currency.

"Any agreement or understanding or course of dealing whereby the bank is to use the identical moneys collected and substitute its own obligation in its stead, destroys all idea of a trust." (*Akin v. Jones,* 93 Tenn. 353, 362.)

This transaction was handled in the usual and ordinary way of making collections through banks, with the relationship of principal and agent existing until the collection was made; then the bank by its own obligation in the form of a cashier's check acknowledged itself to be indebted to the Kansas City correspondent for the benefit of the plaintiff herein and the relation of debtor and creditor arose, which is inconsistent with the idea of the collection being a trust fund.

"Where a bank receives payment of a note placed with it by the owner for collection, and upon request of the owner delivers him a cashier's check

for the amount, there being then cash on hand sufficient to meet it, the position of the owner becomes that of a creditor of the bank, entitled to no preference over ordinary creditors upon the failure of the bank leaving unpaid a draft, which was given by it on presentation of the check." (*Massey-Harris Harvester Co. v. First State Bank*, 122 Kan. 483, syl., 252 Pac. 247.)

The same or similar views are expressed in the following recent Kansas cases: *Clark v. Bank*, 72 Kan. 1, 82 Pac. 582; *State Bank v. State Bank*, supra; *El Dorado Nat'l. Bank v. Butler County State Bank*, 120 Kan. 109, 242 Pac. 475; *Guymon-Petro Mercantile Co. v. Farmers State Bank*, 120 Kan. 233, 243 Pac. 321; *First Nat'l Bank v. Farmers State Bank*, 120 Kan. 706, 244 Pac. 1039.

It was admitted in the trial of the case that the bank was insolvent at the time this transaction occurred, and had been insolvent for a week prior thereto, and the court found that the insolvency of the bank was known to its officers prior to the acceptance of the draft for collection. There is considerable controversy as to the sufficiency of proof for this finding. It is claimed that the only evidence that was introduced on that subject was an unverified pleading from the files of the district court filed prior to the transaction alleging the bank to be insolvent and that such was inadmissible. Without attempting to decide the question of the admissibility of this testimony and the weight that should be given to it, we think that this being a usual and ordinary daily transaction of a bank and the fact that the check was sent immediately after and on the same day the draft was received and paid, goes to show with or without the knowledge of insolvency that the officers of the bank were trying to keep it going, and the situation is very different from that where a deposit is received when the bank is known to the officers to be insolvent. This transaction, if consummated, would not have enriched or benefited the condition of the bank, whereas a deposit would be wholly one-sided and without any immediate obligations whatever except to meet the checks of the depositor. In the case of *First National Bank v. Farmers State Bank*, 119 Kan. 198, 237 Pac. 652, the insolvent bank asked a neighboring bank for $1,000 in currency because it was short on currency, and gave its cashier's check, with the understanding that it would be paid in four or five days. In the meantime the bank failed. The court held this was not of a fiduciary or trust character, and therefore was not a trust fund liable to a preference because of the fraudulent conduct of the officers of the failing bank.

"A bank is guilty of fraud on a general depositor in accepting his deposit after the bank has become hopelessly insolvent and has committed an act of insolvency, and the depositor may recover from the receiver of the bank to the extent the deposit augmented the funds coming into the hands of the receiver." (*Kime v. Ladd,* 112 Kan. 603, syl., 211 Pac. 628.)

"The general rule is to the effect that acceptance of general deposits by a bank which is hopelessly insolvent to the knowledge of its officers constitutes such a fraud as will entitle the unsuspecting depositor to rescind and recover back the money, or give him a preferential claim, or create a trust *ex maleficio,* provided other conditions sometimes held essential to a recovery, such as augmentation of assets, identification, etc., can be satisfied." (20 A. L. R. 1206. See, also, *City of Spring Hill v. Paxton, Receiver,* 115 Kan. 412, 223 Pac. 283.)

The record here shows that this was one of many similar transactions the same day, and that the check sent out was for $18,000, all of which would tend to show that it was being done in the usual and ordinary course of business and not with a plan or design to fraudulently acquire the benefit of this collection. We therefore conclude that the relation of the parties is that of debtor and creditor and not trustee and *cestui que trust,* and that the fund in question was not a trust fund.

This conclusion makes it unnecessary for us to consider the second element as hereinbefore described in finding a claim to be preferential, viz., whether or not the funds in question reached the hands of the receiver.

With reference to the question of interest, the plaintiff is entitled to interest on its common claim from the date the bank collected the claim. R. S. 41-101 provides:

"Creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the same and ascertaining the balance."

In the case of *Turner v. Otis,* 30 Kan. 1, 1 Pac. 19, it was held in the dissolution of a partnership:

"Where a settlement is corrected by charging the defendant with a certain amount which he had wrongfully collected and withheld, such amount should carry interest from the time of collection." (Syl. ¶ 2. See, also, *City of Spring Hill v. Paxton, Receiver,* supra; *Honer v. State Bank,* 114 Kan. 123, 216 Pac. 822.)

The judgment of the district court is reversed and the cause remanded, with instructions to render judgment in favor of the plaintiff for $1,501 and interest thereon, but that such claim shall not be

entitled to preference in the distribution of the assets or entitled to any priority with reference to the assets purchased from the receiver of the American State Bank by the Reserve State Bank.