No. 31,576

Ben C. Bond, *Appellee*, v. The Commercial State Bank of Lindsborg, Charles W. Johnson, Receiver, and Robert Sohlberg, Sr., Assistant Receiver, *Appellants*.

(31 P. 2d 40.)

354

Opinion filed April 7, 1934.

*George R. Lehmberg,* of McPherson, for the appellants.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger* and *E. S. Hampton,* all of Salina, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This action is one to recover a judgment for a preferred claim against the assets of a failed state bank in the hands of the receiver. The trial court made findings of fact and conclusions of law and rendered judgment for the plaintiff, from which the defendants appeal.

The assignments of error concern many matters, including the parties to the action, the nature of the cause of action, the pleadings, and conclusiveness of admissions of the defendants, the findings and conclusions, and the motion for a new trial.

The plaintiff was, in 1930, receiver for the First National Bank of Lindsborg, Kan., and among the assets of that bank held a note for $6,440 given the bank, prior to its failure, by one Ernest Jacobson, and secured by a chattel mortgage, duly recorded, on one hundred and twenty steers. Defendant, the Commercial State Bank of Lindsborg, Kan., also held a note of the same party for $4,000, secured by a chattel mortgage on different cattle. The further history of the preliminary transactions involved is best stated in the fourth, fifth, sixth, seventh, eighth and eleventh findings of fact, which are as follows:

"4. On or about November 11, 1930, without the knowledge or consent of Ben C. Bond, as receiver of the National Bank, Jacobson shipped all of the cattle described in the chattel mortgage given the Commercial State Bank and about seventy head of the cattle covered by the mortgage given the National Bank and sold the same at Kansas City, Mo., for $6,296.90, which was deposited in the Drovers National Bank of Kansas City, Mo., to the credit of the Commercial State Bank of Lindsborg, and advice of such credit was sent the Commercial State Bank, and on November 12, 1930, such last-named

bank credited Jacobson's account with that amount. Neither the Commercial State Bank nor any of its officers had any part in the shipment and sale of the cattle upon which the First National Bank held a mortgage, nor in placing proceeds in Drovers National Bank.

"5. Within two or three days Jacobson told the officers of the Commercial State Bank that included in the shipment and sale of the cattle were cattle upon which the First National Bank held a mortgage, and that $2,000 of such deposit belonged to the receiver of the First National Bank, and that he intended to pay such receiver the sum of $2,000 out of the proceeds from such cattle.

"6. The Commercial State Bank debited Jacobson's account with the amount of the note he owed it, $4,047.75.

"7. The plaintiff had no notice or knowledge of the sale of such cattle upon which he held a chattel mortgage until the early part of December. Being unable to find the cattle and unable to locate Jacobson he went to the Commercial State Bank where he was informed by the cashier that the National Bank cattle had been sold and that the proceeds from the sale were in the Commercial State Bank to Jacobson's credit.

"8. After banking hours Saturday, December 13, 1930, Jacobson came to plaintiff's office in the First National Bank and gave him a check for $2,000, drawn upon his account at the Commercial State Bank, informing him that this was the National Bank's share of the proceeds derived from the sale of the cattle. Bond, the plaintiff, credited Jacobson with $2,000 upon his note.

"11. Soon after the Commercial State Bank opened on Monday, December 15, 1930, Ben C. Bond, receiver, sent his clerk with the $2,000 Jacobson check to the Commercial State Bank, and the clerk exchanged the check for a draft drawn on the account of the Commercial State Bank at the Drovers National Bank of Kansas City, Mo., and payable to the Stock Yards National Bank of Kansas City, Mo., which draft was mailed before noon of that day to the Stock Yards National Bank."

The Commercial State Bank closed its doors during the afternoon or evening of that same day; the state bank receiver took charge thereof and, by telegram, stopped the payment of this and other drafts on the Drovers National Bank. The record and findings show there was more than enough of cash on hand in the defendant bank when this check for $2,000 was presented by plaintiff to pay the same and more than $11,000 in the Drovers National Bank to the credit of the Commercial State Bank when the receiver took charge of the assets.

The three usual and necessary matters for determination in an action to recover a preference are the establishment of a trust fund, the augmenting of the assets of the bank thereby and the tracing of these augmented funds into the hands of the receiver. To these the appellants here have added several questions, first, with reference to the parties, urging that none of the defendants are proper de-

fendants in an action of this kind, particularly the assistant receiver and the failed bank corporation. Appellee cites *Cheney v. Johnson,* 135 Kan. 521, 11 P. 2d 709, as a precedent for both, and there are other cases in the same and the preceding volume, but no statement as to the necessity or approval of making the assistant receiver a party. It is different as to the failed bank being a party. In many instances it may not be a necessary party, but it is usual and best to make it a party with the receiver wherever fraud is charged, as in this case, and as was charged against the bank and its officers in *Investment Co. v. Bank,* 98 Kan. 412, 158 Pac. 68, and *Steele et al. v. State Bank et al.,* 116 Kan. 510, 227 Pac. 352. Of course, the fraud alleged related to a time before the receiver took charge, and there was no finding of fraud in this case. If either of these defendants was not a necessary party defendant, that would not be any ground for reversal of the judgment against the receiver.

Appellant criticizes the petition because it contains other allegations about plaintiff losing his right to recover from the owner of the cattle, but a careful reading of the petition will readily show such to be other than the real cause of action, and it can be regarded as surplusage, without injury to either party.

Plaintiff also alleged in connection with the fraud that the Commercial State Bank did not have sufficient funds in the bank to pay the check when it was presented, but on the trial the record shows that plaintiff, by his attorney, in open court stated that such allegation should be eliminated.

Two parts of the petition in connection with the prayer of the petition plainly show the real nature of the action. These two portions are as follows:

"Said cattle were sold at Kansas City, Mo., for a sum in excess of two thousand dollars, and the proceeds from the sale of said cattle were deposited by the purchaser thereof in the Drovers National Bank of Kansas City, Mo., for the credit of the Commercial State Bank of Lindsborg, and augmented the funds of said bank, and said funds so augmented passed into the hands of the receiver of said bank. . . .

". . . that said bank did have sufficient funds in the Drovers National Bank at Kansas City, Mo., where the proceeds from the sale of said Ernest Jacobson's cattle were deposited, and upon which bank said draft was drawn."

Because the plaintiff brings the action in his individual capacity and alleges the transaction about the sale of the cattle and the deposit of the $2,000 proceeds belonging to the bank of which he was then the receiver being made in the Drovers National Bank to the

credit of the Commercial State Bank, and his being required by the comptroller of currency to personally pay that amount to his successor as receiver, and the draft being indorsed and assigned to him so that "he is now the owner and holder of said draft," the appellants urge that this is nothing more than an ordinary common-law action upon the draft and a claim for a money judgment against the receiver.

Appellants dwell at great length on their theory that these allegations entirely determine the matter of preference, because they were admitted in the answers and because they show a confirmation of the contract leading up to the draft rather than a rescission thereof, and that plaintiff is bound thereby and estopped from claiming a preference.

The theory and position of the appellants can best be stated in the language of their counsel, first in his objection to the introduction of any testimony by the plaintiff, and in one of the concluding paragraphs of his brief, which are as follows:

". . . make an objection to the introduction of any evidence under the petition, so far as establishing a trust fund or a claim for a preferred lien, on the grounds that the plaintiff in this case asks for a judgment personally against the Commercial State Bank, and also a judgment personally against the receiver for the sum of $2,000 with interest at 6 per cent from December 13, 1930, and they have thereby elected to not pursue the trust fund as owner but have elected to take the value of the property."

"Being the owner and holder of the draft is not controverted under the pleadings, the plaintiff also having affirmed the contract made the contract binding and valid from the beginning, no matter how obtained. The relation is debtor and creditor, and plaintiff is not the owner of any property, no matter its form, and cannot by any possibility be given a preference upon the assets coming into the hands of the receiver. Another way of saying the same, that plaintiff is not the owner of any property in the assets."

These theories are most earnestly argued by counsel for appellants as applied to the pleadings, the admissions and the requested findings, but we think there is nothing in the pleadings or admissions to prevent the action of the plaintiff being one to establish a trust fund and a right to a preference. The findings of the trial court cover all the necessary features for a preference, and we have no difficulty in finding ample evidence in the record to support those findings, the three points necessary for a preference being the establishment of the relation of a trustee and a *cestui que trust*, the augmenting of the funds of the bank, and the tracing of those funds into the hands of the receiver. In this case the evidence and findings

show the augmenting of the funds of the defendant bank two or three days before the officers of that bank knew of the trust or to whom the additional funds belonged, and two or three weeks later the cashier of the Commercial State Bank told the plaintiff, as receiver of the First National Bank, of the receipt of the extra fund of $2,000, and that his bank was holding the same for the plaintiff as receiver. The record and findings present the very unusual situation in such cases of an admitted trust relationship. Many of the cases cited by appellants are where one or more of these three points are lacking, but such decisions are not applicable here, for there is no question about all three points being fully established.

The real legal question here involved is, whether the presenting of the cattleman's check and asking for a draft destroyed the trust theretofore existing. Appellants cite among others the case of *Massey-Harris Harvester Co. v. First State Bank*, 122 Kan. 483, 252 Pac. 247, where it was said:

"Where a bank receives payment of a note placed with it by the owner for collection, and upon request of the owner delivers him a cashier's check for the amount, there being then cash on hand sufficient to meet it, the position of the owner becomes that of a creditor of the bank, entitled to no preference over ordinary creditors upon the failure of the bank leaving unpaid a draft, which was given by it on presentation of the check." (Syl.)

The following cases, cited by appellants, are of similar import, and the same conclusion was reached therein: *El Dorado Nat'l Bank v. Butler County State Bank*, 120 Kan. 109, 242 Pac. 475, and *First Nat'l Bank v. Farmers State Bank*, 120 Kan. 706, 244 Pac. 1039. The case of *Colorado & S. Rly. Co. v. Docking*, 124 Kan. 48, 257 Pac. 743, also cited by appellants, was where an item was sent through several banks for collection, and the failed bank became a debtor instead of an agent, as was said in the opinion on page 51:

"The draft in question in making its trip from Denver to Wichita via Kansas City, Mo., passed through several banks for collection and credit, and undoubtedly the relation of one to the other, up to and including the American State Bank, in turn was that of principal and agent, and that relation might still have been maintained had it not been for the order of the Federal Reserve Bank requiring remittance to be by draft on Kansas City. This interrupted that relationship by making the Wichita bank a debtor. This direction was disregarded to the extent of using a cashier's check instead of draft on Kansas City, which made the situation no better. Immediately, of necessity, the funds collected became a part of the funds of the collecting bank and were mixed with its funds, thus losing for them any claim of being a special fund."

The case of *Clark v. Bank*, 72 Kan. 1, 82 Pac. 582, is cited by ap-

pellants as exactly similar to the one at bar, and it is, as far as it concerns the exchanging of a check on funds in the bank for a draft on a correspondent bank, and it was there held that there was no right of priority of the holder of the draft above the other creditors, "in the absence of any special circumstances." The special circumstances in the case here on review are the establishing of a trust fund and the augmenting of the funds of the bank. The only one of the three points mentioned in the Clark case, *supra*, was that the funds reached the hands of the receiver. This Clark case was discussed and distinguished at some length in the case of *State Bank v. State Bank*, 114 Kan. 463, 218 Pac. 1000:

"A draft drawn by a bank upon another bank has the same status in law as a check drawn upon a bank by an individual. (McGee on Banks and Banking, 3d ed., p. 306; Michie on Banks and Banking, p. 1611.) This is not an action against the bank upon which the check is drawn, hence we are not concerned with the doctrine of whether or not a check drawn upon a bank has the effect of segregating the funds of the bank to the amount of the check, though that doctrine is well settled in this state. (*Clark v. Bank,* 72 Kan. 1, 82 Pac. 582; Gen. Stat. 1915, ¶ 6717.) This is an action against the drawer of the draft, and stands exactly in the same situation as would a suit against an individual who had drawn his check upon a bank.

"In this case the Chetopa State Bank was the holder of checks drawn by various individuals upon the Farmers & Merchants State Bank. It presented these checks at the time of clearing for payment. It was in the same situation as though it had taken the checks direct to the Farmers & Merchants State Bank and there purchased a draft for them, or in the same situation as though it had purchased a draft from the Farmers & Merchants State Bank for cash. The great weight of authority is that under such circumstances the relation of debtor and creditor is created and not that of trustee and *cestui que trust*. In all, or nearly all, of the cases holding to the contrary some other element enters into it, as that of fraud or fiduciary relationship, which, as we have already seen, are not present in this case. The case is controlled by the principle announced in *Clark v. Bank,* 72 Kan. 1, 82 Pac. 582 . . ." (p. 467.)

In the case of *Secrest v. Ladd, Receiver*, 112 Kan. 23, 209 Pac. 824, it was held:

"Where a special deposit is placed in the bank to be used only in payment of certain shares of capital stock of the bank when the same should be duly authorized and issued, which stock was not authorized nor issued, but the bank misappropriated the money so deposited and used the same in its general business thereby augmenting its assets, and where shortly afterwards the bank became insolvent and its assets passed into the hands of a receiver, the special deposit constitutes a trust fund which the beneficial owner was entitled to follow and reclaim from the augmented assets in the hands of the receiver in preference to the claims of general creditors." (Syl. ¶ 1.)

It was held in the case of *Brogan v. Kriepe, Receiver*, 116 Kan. 506, 227 Pac. 26:

"Where a realty company doing business away from the county seat undertakes, for compensation, to pay taxes for its customers upon their furnishing it the money, and deposits the money received from them to the credit of the county treasurer, with his consent, in a local bank which is not a county depository and in which the treasurer cannot lawfully deposit public funds, the bank having full knowledge of the facts, and while matters are in that condition the bank is closed and proves to be insolvent, the taxpayers have valid preferred claims for the amounts paid by them against the assets in the hands of the receiver so far as they are augmented thereby." (Syl.)

In *Griffith v. Burlington State Bank*, 128 Kan. 279, 277 Pac. 42, it was held:

"The proceedings considered in an action in which it appeared a check on a bank was sent directly to the bank for collection and return, and *held*, a preferred claim for the amount of the check was established against the receiver of the bank which failed before return of proceeds of collections was effectuated." (Syl.)

In the case of *Washbon v. Bank*, 87 Kan. 698, 125 Pac. 17, the following was copied with approval from 2 Morse on Banks and Banking, 4th ed., section 451:

" 'A credit given for the amount of a check by the bank upon which it was drawn is equivalent to, and will be treated as, a payment of the check. It is the same as if the money had been paid over the counter on the check, and then immediately paid back again to the account or for the use for which the credit is given.' " (p. 707.)

We conclude that the giving of the check and the accepting of a draft instead of the cash in no way destroyed or changed the trust relationship theretofore existing, and the plaintiff was entitled to the preference which the trial court gave him.

We find no error in the overruling of the motion for a new trial nor in the other rulings mentioned in the assignments of error.

The judgment is affirmed.

BURCH, J., not sitting.