TAYLOR v. FIRST NATIONAL BANK OF DEQUEEN.

Opinion delivered December 7, 1931.

*Steel & Edwards*, for appellant.

*Abe Collins*, for appellee.

BUTLER, J. The Bank of DeQueen and the First National Bank of DeQueen, appellee here, were two banks doing business in the city of DeQueen on and before July 15, 1930. At the close of the business on that date the officers of the two banks, as was their custom, met for the purpose of clearing checks they had paid for each other in the course of the day's business. It was ascertained that the appellee bank held checks of the Bank of DeQueen in the aggregate sum of $1,311.06, and the latter bank held checks on the appellee bank amounting to $413.71. The cashier of the Bank of DeQueen, in the settlement of the balance for that day's business, gave appellee bank a draft on its correspondent bank in Texarkana, where it had at the time money on deposit more than sufficient to take care of the draft.

The Bank of DeQueen failed to open its doors on the next banking day, and was taken over for liquidation by the appellant, the State Bank Commissioner. When the draft in controversy reached the correspondent bank, that bank had received notice of the insolvency of the drawer and thereupon refused to pay the draft applying the sums on deposit as a credit upon the indebtedness the Bank of DeQueen owed it. The checks drawn by depositors included in the settlement between the Bank of DeQueen and the appellee bank were marked paid and charged by the banks to the accounts of the depositors who had drawn these checks. When the liquidating agent, Simmons, took charge of the Bank of DeQueen, he offered to return to the bank the checks that it handled of the Bank of DeQueen on the last day of its business, and to reverse the entries on the books of that bank if appellee bank would return the $413.71 of checks drawn on it on that day or the cash equivalent, which proposition was declined by the appellee.

Appellee bank presented to the appellant bank commissioner the aforesaid draft which the Bank of DeQueen had drawn in its favor for allowance as a preferred claim. On the refusal of the appellant to so allow it, the appellee filed its petition and intervention in the chancery court of Sevier County, setting up substantially the facts leading up to the drawing of the draft and the rejection of the claim by the appellant as a preferred claim, with a prayer that it be allowed as a prior claim against the assets of the insolvent bank in the hands of the commissioner. An answer was duly filed to the petition and issue joined. At the hearing of the case, when the above facts were developed in testimony, the chancellor granted the prayer of the petition, and the bank commissioner has duly prosecuted this appeal.

The sole question presented is whether the transaction between the two banks and the check or draft given in consummation thereof entitled it to be allowed as a prior claim as contended by the appellee in the court below, and as the chancellor found.

It is settled law that one who holds a check or draft of a bank which becomes insolvent before such is paid is not entitled to any preference over other creditors. 7 C. J., p. 751. Under a state of facts practically identical with those before us, the court, in the case of *First National Bank* v. *Farmers' State Bank,* 120 Kan. 706, 244 Pac. 1049, 44 A. L. R. 1531, held that the holder of the draft of the insolvent bank, given for the balance in the holder's favor where checks were cleared between it and the insolvent bank on the last day of that bank's business, and which had been dishonored by its correspondent upon which the draft was drawn, was entitled to no preference over the general creditors of the insolvent bank, as there was no trust relation created by the transaction, and the relation existing between the two was merely that of debtor and creditor.

In *American Bank* v. *People's Bank* (Mo. App.), 255 S. W. 943, a similar state of facts existed, and there the court held that, under the facts, the relationship of debtor and creditor existed. In commenting upon the nature of the transaction, the court said: "There was nothing in the transaction to establish or create a trust relationship between the plaintiff and defendant. That the transaction augmented the assets of the defendant, if this be true, is not sufficient to entitle plaintiff to a preferential payment of its claim. To entitle it to such preference an agency or trust relationship between plaintiff and defendant must be shown. No such relationship appears."

The first-mentioned case is reported in 44 A. L. R., issued in 1926, at page 1531, and in the case note referring to that case and to the case of *American Bank* v. *People's Bank, supra,* the editor says: "The only two cases that seem to have arisen involving the question of whether the balance due other banks on clearing-house settlement is a preferred claim against the insolvent bank having reached the conclusion that such claim cannot be considered preferential."

Appellee bottoms its case upon subdivision 7 of § 1 of act 107 of the Acts of 1927, the terms of which it is contended, as applied to the facts in this case, establish the agency of the Bank of DeQueen for the reason that the draft drawn and dishonored covered the proceeds of a collection made by the Bank of DeQueen by honoring checks upon itself which were charged to the accounts of depositors who had drawn the checks. The language of that subdivision thought to be applicable is as follows: "A prior creditor * * * shall be (7) the owner of a remittance of the said bank, the proceeds of a collection made by said bank by honoring a check or other order upon itself or by a charge against the account of its depositor, although the said collection has not had a distinctive identity in the hands of said bank, has not actually increased its cash assets and has resulted in merely shifting its liability upon its books from one of its creditors to another or new creditor, in instances where the said remittance has been presented with due diligence for payment to said bank or its drawee and is not paid, and where the instrument collected cannot be returned by the commissioner to the person who had transmitted the same to said bank for collection, the said instrument having been surrendered by said bank upon its collection in such manner prior to the commissioner taking charge, it being hereby made the duty of said commissioner to reverse the entries upon the books of said bank as to all collections made in such manner in all instances where the said unpaid remittance has been so presented with due diligence and where the said instrument remains in said bank unsurrendered, by which said reversal of entries the said instrument shall be deemed to be from its inception unpaid, and thereupon the said commissioner shall return the said instrument to the person who had transmitted the same to said bank, which return shall be in extinguishment to the extent thereof of the said remittance." The contention may be best stated in the language of the appellee: "This case turns, * * * on the question as to whether or not, under the facts in this case and the provisions of subdivision 7 of § 1 of act 107 of

1927, the entries involved could have been reversed at the time the deputy bank commissioner offered to return to appellee the checks delivered by it to the Bank of DeQueen two weeks prior thereto, conditional upon appellee paying him $413.71 or returning the checks in that amount drawn on it by its depositors and obtained from the Bank of DeQueen when the appellee and said bank last cleared, which alternative the proof shows it would have then been impossible to comply with because said checks had been paid and returned to the persons who drew them." This statement presupposed that the draft represented "the proceeds of a collection" within the meaning of subdivision 7, *supra*. Assuming that the statement of fact contained in the quotation from the appellees above that the deputy bank commissioner had been in charge of the Bank of DeQueen two weeks before he offered to return to appellee the aforesaid checks, is supported by the record, and assuming further that at that time it was impossible for the appellee to return the checks drawn on itself to the persons who had drawn them, we are of the opinion that these facts created no preferential claim, for the reason that appellee is in error in the assumption that the draft represented the proceeds of a collection within the meaning of subdivision 7, *supra*. Independent of the statute, if the checks received by the Bank of DeQueen were for collection merely, then it would have acquired no title to the proceeds of the same, but would have held them in trust for the appellee. *Darragh Co.* v. *Goodman*, 124 Ark. 532, 187 S. W. 673. But this was not the case. These checks were received in the ordinary course of business, not for collection but for payment, which was attempted to be effected by charging them to the accounts of the depositors who had drawn them and delivering to the appellee bank a draft for the gross amount of the proceeds less the checks drawn on appellee which it had acquired in the course of business, and the relation of debtor and creditor necessarily arose, which relation would continue as to this transaction until the draft had

been honored, and, it not having been honored, that relationship still subsists.

There is nothing in the statute hereinbefore quoted that conflicts with this conclusion, and therefore the general rule stated and the cases of *First National Bank* v. *Farmers' State Bank* and *American Bank* v. *People's Bank, supra,* are pertinent and sustain the view we have taken, which results in a reversal of the case with directions to allow the claim as that of a general creditor. It is so ordered.