No. 26,019.

THE FIRST NATIONAL BANK OF OTTAWA, *Appellant,* v. THE FARMERS STATE BANK OF QUENEMO, and R. T. KREIPE, as Receiver, etc., *Appellees.*

SYLLABUS BY THE COURT.

BANKS AND BANKING—*Insolvency—Right to Preference.* The plaintiff bank advanced money to the defendant bank, which represented that it was low in cash. The latter obtained the money to meet its current obligations and to carry on its regular banking business. For the money it gave the plaintiff bank a cashier's check, with the understanding that the check would be sent through a clearing bank and would not be presented for payment for about four or five days. It was not paid when presented, as the defendant bank remained open only one day after the money was obtained, and in fact had been in a state of insolvency for some time before the transaction, but of this fact the plaintiff bank was not apprised. The defendant bank and its assets passed into the hands of a receiver, to whom the plaintiff bank made the claim that the money furnished constituted a trust fund and entitled it to a preference over general creditors. *Held,* the transaction did not create a trust relationship nor give the plaintiff bank a right to the preference claimed.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed July 11, 1925. Affirmed.

*C. A. Smart,* of Lawrence, for the appellant.
*Ralph T. O'Neil* and *John D. M. Hamilton,* both of Topeka, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.:    The First National Bank of Ottawa brought this action to recover from the Farmers State Bank of Quenemo, and its receiver, R. T. Kreipe, $1,000, and to have the indebtedness declared to be a preferred claim against the assets of the defendant bank. Upon the evidence the trial court decided that the plaintiff had a valid claim against the defendant bank and its receiver, but that it was not entitled to a preference in the assets of that bank now in the hands of the receiver. Plaintiff appeals.

On February 16, 1922, after banking hours, W. J. Hutchison, the assistant cashier of the defendant bank, visited the plaintiff bank and stated that his bank was a little low on cash, and he desired to secure $1,000 in currency. The plaintiff bank gave Hutchison that

amount in currency and accepted for it a cashier's check drawn by Hutchison on defendant bank, payable to the plaintiff bank. Hutchison represented and the plaintiff bank understood that the defendant bank wanted the money to meet its current obligations and to carry on its regular bank business. On that day the assistant cashier placed the $1,000 thus obtained in the defendant bank and credited it to the cashier's account. A cashier's account was kept, out of which fund the cashier paid claims against the bank. The cashier's check was sent by the plaintiff to Kansas City to be presented and collected in the usual course of business, and it ordinarily takes four or five days for clearing such paper. The defendant bank transacted banking business on February 17, but on the morning of the following day, and before banking hours, the cashier committed suicide, and the doors were not opened for business on that day. On the same day the bank commissioner took charge of the bank, and shortly afterwards Kreipe was appointed receiver. On February 16, 17 and 18, and prior thereto, the defendant bank was insolvent, and such insolvency was known to its cashier during that time. In the defendant bank was $12,000 worth of notes, purporting to be a part of its assets, which were forgeries, some of the forgeries, and probably all of them, had been known to be such by the cashier on and prior to February 16, 1922. Since the appointment of the receiver he has been engaged in winding up the affairs of the bank and has collected practically all of its assets, and in addition $10,000 from a bonding company which had bonded the cashier, and also $15,000 on stockholders' statutory liability. From these sources he was able to pay 30 per cent upon the outstanding indebtedness of the bank and will be able to pay between 5 and 10 per cent more. The plaintiff bank when it delivered the currency to Hutchison had no knowledge of the insolvency of the defendant bank and delivered it to him as a mere accommodation to the defendant bank. During the day of February 18, 1922, the defendant bank had on deposit with the plaintiff $266.54, which the plaintiff at once charged against the defendant bank as a credit on the $1,000 advanced on the cashier's check. Prior to the beginning of this suit the plaintiff bank placed its claim against the receiver for the $1,000 and asked that it be declared a preferred claim, but this was refused by the receiver, who did allow the plaintiff bank a credit for the $266.54 and later paid the plaintiff bank a 30 per cent dividend on the balance of the $1,000.

The court, after finding the above facts, made the following specific findings:

"10. At the close of business on February 16, 1922, the cash on hand in the plaintiff bank was a little over $1,100, and on February 17, and at the time the bank passed into the hands of the receiver, the cash on hand was a little more than $1,000; less than one-half of these amounts was in currency. No part of the currency received by the defendant bank from the plaintiff bank could be traced into the assets in the bank at the time the receiver took possession of the same."

"11. There was no agreement or understanding between the parties that the cashier's check given to the plaintiff bank should be satisfied out of any particular funds or that any particular fund or funds should be assigned to the plaintiff bank, but only that the check was to be paid by the defendant bank on presentation in the regular course of business, the representatives of the two banks understanding that by the time the check should have been sent to the plaintiff's correspondent in Kansas City and afterwards presented to the defendant bank, the latter bank would be in funds to take care of the same."

In its conclusions the court said it is the view of the court that the transaction between the two banks was in effect a loan by the plaintiff to the defendant bank for the period which would be required for the cashier's check to be passed through the bank of the plaintiff's correspondent in Kansas City, and presented in the regular course of business for payment out of the general funds of the defendant bank at Quenemo, and for that reason and on the facts found, the plaintiff is not entitled to a preferred claim against the assets of said defendant bank now in the hands of the receiver.

In its appeal the plaintiff insists that the evidence did not justify findings Nos. 10 and 11, but, on the contrary, established a trust relationship which entitled plaintiff to be treated as a preferred creditor.

Did a fiduciary relation arise from the transaction? We think the trial court correctly held it to be an accommodation loan and that it did not have a trust character entitling the plaintiff to payment out of the assets of the bank in preference to other general creditors. The currency was given to the defendant bank because the latter was low in cash, with the understanding that the money was to be used in carrying on its regular bank business. The evidence given for the accommodation was a cashier's check, which both parties understood would be transmitted to a Kansas City correspondent and could not be passed through the clearing house and presented for payment in less than four or five days. This

method was unlike any other that had been employed where the defendant bank had previously obtained currency from the plaintiff bank. By this method the defendant bank was given four or five days to rehabilitate its cash account before presentation and payment of the cashier's check. It is admitted that when the currency was obtained from the plaintiff it was the subject of consideration as to what evidence of the advancement should be given, and it was finally decided that it should be in the form of a cashier's check. The cashier of the plaintiff bank testified that he understood the defendant would have the use of the $1,000 for four or five days while the check was clearing. Both parties understood that the check given for the $1,000 so advanced would not be presented for collection for the period named and that the defendant would have the use of the money during that time to carry on its business. The probable expectation was that the defendant would in the meantime acquire cash to meet the check when it was presented. The circumstances of the transaction and the understanding of the parties in the advancement of the money must all be considered together, and they show not an intention to assign any fund to the plaintiff bank, but rather an extension of credit or loan to the defendant, payable at the end of four or five days, which does not entitle it to priority over general creditors. It is true that the defendant bank was in fact insolvent at the time of the advancement—a fact not known to the plaintiff—but that fact alone did not create a trust relationship. A loan to one who is insolvent gives him a right of action when a default occurs, but it does not constitute an equitable assignment of any particular fund. The evidence and findings disclose the intention of the parties, and it is clear that there was no assignment of a particular fund and no trust relationship created which entitled plaintiff to a preference over other general creditors. That being the situation, it is unnecessary to consider the questions discussed as to whether or not the money advanced can be traced into the assets turned over to the receiver.

The judgment is affirmed.