No. 30,307.

W. E. SCHOEN, *Appellant*, v. CHARLES W. JOHNSON, Receiver, and JOHN DOANE, Assistant Receiver, of the Commercial State Bank, *Appellees.*

(7 P. 2d 117.)

Opinion filed January 30, 1932.

*C. M. Higley,* of Cawker City, *C. L. Kagey, Leon W. Lundblade* and *L. M. Kagey,* all of Beloit, for the appellant.

*N. C. Else,* of Osborne, *A. E. Crane* and *B. F. Messick,* both of Topeka, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action against a failed bank and its receiver to have the sum of $3,675 adjudged to be a trust fund and to be paid in full by the receiver out of the assets of the bank which had come into his hands. The trial court made findings of fact, concluded the claim should be allowed as that of a general creditor, but not as a preferred claim, and rendered judgment accordingly. Plaintiff has appealed.

Plaintiff, a prominent farmer and live-stock feeder, made a shipment of live stock to Kansas City and caused the proceeds, amounting to $2,576.51, to be credited, January 29, 1930, to his account in

the Commercial State Bank of Cawker City. On February 17, 1930, he caused a similar credit of $2,794.56 to be made to the same account. He was indebted to the Central Trust Company at Topeka in the sum of $3,500, which was secured by a mortgage on farm land, and which, together with the semiannual interest of $175, was due March 1, 1930. He had timed his shipments of live stock to have funds to pay this mortgage. On February 24, 1930, he went to the Commercial State Bank and asked its cashier, a Mr. Buist, to send the money to pay the mortgage. Buist promised to do so. Plaintiff made out and signed a check for $3,675, payable to the Commercial State Bank, which he handed to Buist, who marked it "paid" and later, and on February 28, charged the amount to plaintiff's account. The amount of this check is the sum claimed to be a trust fund. Buist did not remit promptly, but on March 15, 1930, he issued a cashier's check, payable to the Central Trust Company, for $3,692.35, being the amount of plaintiff's mortgage, with interest due March 1, with additional interest to the 17th, and mailed it to the Central Trust Company at Topeka. This cashier's check was not paid, and on March 18, 1930, the bank closed its doors, and in due time its assets went into the hands of the receiver. Among other things, the court found that the evidence did not disclose that any of the money or funds deposited by the plaintiff in the bank ever reached the hands of the receiver; that at all times after the plaintiff made the first of the two deposits in the bank, as above stated, there was but a small sum of cash in the bank, at times the amount being as low as $500. When the bank closed its books showed resources totaling $139,313, but among the resources so shown were notes amounting to $53,593.12 which were not genuine. On the date it closed it had $1,003.24 in cash on hand, and cash items aggregating $5,065.40, the true value of which was never shown.

In a case such as this, before a sum claimed can be allowed as a preferred claim, it must be shown that the money, or fund, constituted a trust fund, and that it passed into the hands of the receiver. (*State Bank v. State Bank,* 114 Kan. 463, 218 Pac. 1000.) In its simplest form the term "trust fund," as used in cases of this character, means a fund placed with a bank, not to become a part of the general assets of the bank, but to be used for a specific purpose. If the bank fails and a receiver is appointed while that fund is held by the bank, and the fund passes to the receiver, it should be turned back to the one who placed it with the bank, or used by the receiver

for the sole purpose for which it had been placed in the bank. Such a disposition of such a fund is fair to the parties interested in that fund because it accomplishes the very purpose intended. It is also fair to general creditors, for the fund never was intended to be, and never was, a part of the general assets of the bank—that class of assets to which general creditors may look for payment in the event of the bank's insolvency. General creditors are not entitled to have their claims paid from such a trust fund, even if it passed into the hands of the receiver, because it formed no part of the general assets of the bank. But the receiver cannot pay out, or turn over, a fund which he never received. That is too clear to require discussion. Even if one placed a trust fund in a bank, which fund was stolen or dissipated or used in some way before the bank failed, so that it never passed into the hands of the receiver, the receiver should not take the general assets of the bank away from general creditors, who are entitled to receive it in payment of their claims, and pay from such general assets the value of the trust fund which had been placed with the bank. One who places such a trust fund with the bank is not entitled to have it paid from general assets, because he never placed it among the general assets. All of this is discussed and analyzed and illustrated in the opinion of this court, written by Mr. Justice Mason, in *Investment Co. v. Bank*, 98 Kan. 412, 158 Pac. 68.

With these general principles in mind let us analyze this case. Plaintiff placed no actual money or currency in the bank. What he did was to arrange, through the sale of his live stock at Kansas City, for the bank to have credit with its Kansas City correspondent, for which the bank gave him credit as a depositor. He then had an ordinary checking account in the bank, which he checked on for purposes other than the payment of his mortgage. The relation of debtor and creditor existed between plaintiff and the bank. How was that changed, if at all, by the transaction of February 24? On that date plaintiff went to the bank and asked its cashier for the bank to send its check, or draft, to the Central Trust Company for $3,675, and gave to the bank his check on his personal account in the bank. The cashier said he would do so, and, though somewhat tardy, he eventually did so. There was no deposit of money or funds at that time, nor was there any change made in the general assets of the bank. Appellant argues that the transaction was the same as though plaintiff had given his check to the bank, asked for

the money on it, and after it was given to him, handed it back to the cashier with instructions to send that particular money to the Central Trust Company, and in support of that view cites *Tire & Rubber Co. v. Bank*, 109 Kan. 772, 204 Pac. 992. The situation is not the same. There the bank had the money with which the check in question could have been paid, and the theoretical transaction actually could have taken place. Here the bank did not have the money to pay a check of $3,675, or any substantial part of it. It had only a few hundred dollars on hand. The theoretical transaction actually could not have taken place. Nor does it appear from the record that such was the thought or intention of the parties. Their entire transaction had been exchange of credits, as distinct from withdrawals or deposits of money. Hence it must be seen that the case must fail because of lack of evidence to establish a trust fund.

However, the trial court placed its decision primarily upon a lack of showing that the fund claimed to be a trust fund ever passed to the hands of the receiver. On that point the judgment of the court was correct. The only way the bank ever received anything for the credit deposit it gave to plaintiff was by receiving credit with its Kansas City correspondent. At the time the bank failed that credit was substantially exhausted. The small credit it then had with its Kansas City correspondent as a part of the credit it obtained because of the transactions with plaintiff is not disclosed by the evidence. The evidence, therefore, fails to show that any of the fund for which plaintiff received credit as a deposit passed to the hands of the receiver. In fact, plaintiff did not plead that this fund reached the hands of the receiver, and no serious effort was made to show that it did.

By the time of the hearing of the motion for a new trial plaintiff had discovered that the books of the bank in the hands of the receiver tended to show loans had been made by the bank after plaintiff had made his deposit therein, and before its doors were closed and the receiver took charge, aggregating approximately $15,000, and asked permission of the court to reopen the case and to be permitted to make that showing. The request was denied, and appellant complains of that ruling. The ruling was not erroneous for the reason that a simple list of those purported loans would have established nothing beneficial to plaintiff. Nearly half of the notes shown by the books of the bank as loans were forgeries. No offer was made to show that the entries sought to be shown represented *bona fide*

loans, or whether they represented new loans or renewals, and if new valid loans whether any of them were made with funds deposited to the credit of plaintiff.

The result is, the judgment of the court below must be affirmed. It is so ordered.