No. 30,524.

HATTIE J. CHENEY, *Appellant*, v. CHARLES W. JOHNSON, Receiver of The Peoples State Bank of Fort Scott; FRANK W. DAVIS, Assistant Receiver, etc.; and THE PEOPLES STATE BANK OF FORT SCOTT, *Appellees*.

No. 30,520.

ELLA LOUISE CLARY, as Administratrix of the Estate of U. G. Clary, Deceased, *Appellant*, v. *Same Appellees*.

No. 30,463.

JOHN SCHOLFIELD, Executor of the Estate of James Scholfield, *Appellant*, v. *Same Appellees*.

No. 30,523.

E. J. ROLLINGS, *Appellant*, v. *Same Appellees*.

No. 30,525.

JOHN BALOCCA, doing business as BALOCCA CANDY COMPANY, *Appellant*, v. *Same Appellees*.

No. 30,522.

FRANK CUNNINGHAM, doing business as CUNNINGHAM INVESTMENT COMPANY, *Appellant*, v. *Same Appellees*.

No. 30,367.

SISTERS OF MERCY, a Corporation, *Appellant*, v. *Same Appellees*.

No. 30,702.

THOMAS BRYDEN, doing business as BRYDEN AUTO SUPPLY CO., *Appellant*, v. *Same Appellees*.

No. 30,526.

G. P. HUTCHISON, *Appellant*, v. *Same Appellees*.

No. 30,521.

GENERAL CONTRACT PURCHASE CORPORATION, *Appellant*, v. *Same Appellees*.

(11 P. 2d 709.)

Opinion filed June 4, 1932.

*Harry Warren* and *A. M. Keene,* both of Fort Scott, for Ella Louise Clary; *Harry W. Fisher,* of Fort Scott, for John Scholfield; *Ernest E. Blincoe,* of Fort Scott, for Thomas Bryden; *W. P. Dillard* and *C. E. Hulett,* both of Fort Scott, for Sisters of Mercy, and *A. M. Keene,* of Fort Scott, for all other appellants.

*John L. Connolly,* of Fort Scott, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: Ten different parties brought separate actions in the district court of Bourbon county against Charles W. Johnson, receiver of the Peoples State Bank of Fort Scott, Kan., and the bank itself, to obtain preferred claims on the funds of the insolvent bank in the hands of the receiver. Four of them were for the proceeds of bonds and other securities intrusted to the bank for special purposes, which had been misappropriated and wrongfully disposed of by the bank or its officers without the authority or consent of the owners, and six of them were for deposits made in the bank very shortly before it closed its doors and when it was known to its officers to have been insolvent. The answers were general denials, and the trial court, after hearing the evidence, granted each of the ten plaintiffs a common claim against the receiver and the bank funds in his hands, but denied each and every plaintiff a preferred claim, and each of the plaintiffs appeals. In this court the ten cases were heard, argued and submitted together, and the errors assigned in all of them will be reviewed and considered in this opinion.

No. 30,524 is an action brought and later an appeal taken by Hattie J. Cheney to obtain a preference judgment on two items, one for $5,000 and the other for $1,000. The first was the proceeds of a note and mortgage collected by the bank for the plaintiff at her request, which was to be reinvested by the bank for her as shown by the following receipt given shortly after the collection was made:

"FORT SCOTT, Kan., 5-5-28.

"Received of Mrs. Hattie J. Cheney five thousand dollars, to be loaned the Fort Scott Hide, Fur and Wool Company for one year from May 5, 1928, at 6 per cent. PEOPLES STATE BANK,

By P. H. McAFEE."

Said fund was never loaned to the fur company or any other company or party for her, but was kept and used by the bank. The other item was the collection in February or March, 1929, of a municipal bond of the city of Kansas City, Kan., for $1,000, which was sold by the bank and proceeds collected, but never paid to the plaintiff.

The evidence shows that the bank got the money, that it went into the funds of the bank and was used to take out of the bank worthless notes and to take care of losses that were being sustained

as well as to make loans, but these funds cannot be traced on the books of the bank. When the bank closed on May 1, 1930, and the receiver took charge of its affairs, he took over $12,311.25 cash in the vault, sight exchange in four banks—Merchants Bank of Kansas City, $17,894.22; Citizens National Bank at Fort Scott, $8,209.70; Commerce Trust Company at Kansas City, $366.46; and National Bank of Chicago, $76.75—and states that he had at the time of the trial in his hands approximately $35,000 and uncollected notes worth about $25,000. This he said was outside of and apart from the $10,000 fidelity bond for shortage and the double liability of stockholders. It is also shown from the books of the bank that the Peoples State Bank owed the Merchants Bank $32,500 and that the deposits there were used to help liquidate this indebtedness and release the collateral.

The court gave plaintiff a judgment for $6,000, adjudging it to be only a common claim against the receiver. Appellant assigns it as error for the trial court to deny the prayer of the plaintiff for a preference.

There seems to be no contention as to these items being trust funds in the hands of the bank, but the remaining questions in order to make them preferred claims are, Did these trust funds augment the assets of the bank, and did they later reach the hands of the receiver? The unauthorized appropriation of these two items by the bank did certainly increase the assets of the bank at the time they were put into use for and by the bank, the first item nearly two years before the bank closed, and the last item more than one year before it closed. They were both cash items and increased the assets by $6,000. Appellant cites the case of *Nelson v. Paxton, Receiver,* 113 Kan. 394, 214 Pac. 784, in support of the contention that the use of the funds to take up bad notes may increase the assets of the bank, but that case plainly distinquishes between the fact of increasing the assets of the bank and the fact of those assets coming into the hands of the receiver. It was there said that—

"It would seem to require no argument to establish the fact that if the bank held notes that were valueless, though carried on their books as valuable, money placed in the bank for those notes increased the live and valuable assets of the bank by the amount of the money so deposited." (p. 397.)

And in the same opinion it was said:

"It is well settled that before one having a claim arising from a misappropriation, such as this, can have it decreed to be a trust fund and a first lien upon the assets in the hands of the receiver he must show that the proceeds arising from the unauthorized appropriation of his property were a part, in some form, of the assets which came into the hands of the receiver." (p. 396.)

The judgment in favor of the plaintiff was reversed because there was no showing that the misappropriated funds in some form came into the hands of the receiver.

Appellant further cites *Vincent Grain Co. v. Docking*, 124 Kan. 391, 260 Pac. 610, in support of her claim that trust funds once traced into the hands of the bank are presumed to remain there and to have gone into the hands of the receiver and that they remain at the bottom of the till and are not presumed to have been used in the daily business of the bank as long as there are funds of the bank for such use. In the case cited the trust funds were shown to have been deposited in a certain exchange bank, and when the insolvent bank failed there were on deposit in that exchange bank nearly sufficient to pay the trust fund, but in the case at bar there is no showing that these funds were placed on deposit anywhere, but on the contrary that they were used to take up bad notes and to take care of losses. There is also a showing in the record of this case that although there was a substantial deposit in the Merchants Bank on the day the bank closed it had been carrying an overdraft three or four days earlier.

Appellant further cites the well-stated equitable principle in the case of *Investment Co. v. Bank*, 98 Kan. 412, 158 Pac. 68, to the effect that—

"If the money misappropriated reaches the hands of the custodian who administers the estate, in its original form or in any other—that is, if the assets in his hands are thereby increased by the amount fraudulently obtained —the fund can be restored to the lawful owner and no one will be any worse off than if the transaction never had occurred." (p. 416.)

The difficulty is in tracing the funds to the hands of the receiver. In this case, as well as in the case last cited by appellant, the funds went into bad notes and indebtedness and losses of the bank. There it was said:

"But if it used the money to pay debts of Turner, or even to pay valid indebtedness of the bank, that circumstance does not make a preferred creditor of the plaintiff. The reason for the distinction is clear, although it has not always been regarded. Priority of payment cannot be conceded to a particular creditor of an insolvent estate merely because his claim originated in

a fraud practiced upon him. Such preference as he is given must be based upon the equities of the case, considering the rights of all the parties affected." (p. 416.)

Another statement in the same opinion serves to make the distinction clearer.

"It is not enough to show that the assets of the bank were increased by the deposit to its credit of the money obtained from the plaintiff. That condition necessarily results whenever money is paid to a bank, whatever may afterwards become of it. It is not enough that what may be called the net value of the insolvent estate to be administered has been increased—that the discrepancy between the liabilities and assets is diminished—that the percentage disbursed in dividends shall be enlarged. The test is whether the money which was wrongfully obtained has been disposed of as to increase the fund that reaches the hand of the person charged with administering the insolvent estate, to be by him distributed among the creditors." (p. 415.)

The decision in this case has been cited approvingly in many cases, among which are the following: *City of Spring Hill v. Paxton, Receiver,* 115 Kan. 412, 223 Pac. 283; *Colorado & S. Rly. Co. v. Docking,* 124 Kan. 48, 257 Pac. 743; and *Schoen v. Johnson,* 134 Kan. 612, 7 P. 2d 117.

The facts in this case do not establish enough to meet the test above given, for there is no showing that any of this money wrongfully used by the bank had increased the fund that actually reached the hands of the receiver, to be by him distributed among the creditors. It was said in the case of *Honer v. State Bank,* 114 Kan. 123, 216 Pac. 822, that it was not enough to show that the assets of the bank were increased or that the money received by the bank had been used in reducing the indebtedness of the bank. The most favorable view of the use made of these funds, as shown by the evidence, would be to reduce the indebtedness of the bank, which would not entitle the owner thereof to a preference above the common creditors.

We find no error in the ruling of the trial court denying the plaintiff's claim of preference.

As to the $1,100 balance in the item of $3,000 after the withdrawal of the claim to the extent of $1,900, we think under the limited amount of evidence before us there was no error in the court considering it as one transaction, rather than a divided one leaving a balance which was not affected as the major portion of the amount was affected, which necessitated its withdrawal.

No. 30,520 is an action brought and later an appeal taken by Ella Louise Clary, administratrix of the estate of U. G. Clary, de-

ceased, to obtain a preference judgment for $6,131.92, which amount she claims to have given to the bank to be invested for her by the bank in six thousand dollars worth of fourth Liberty loan bonds, which she never received. The evidence shows that on March 10, 1929, she deposited, as administratrix, in the Peoples State Bank $12,500 and shortly after doing so talked with the president of the bank about investing for her $6,000 of said funds in government bonds, and frequently thereafter inquired if he had procured them, and on December 13, 1929, was informed they had arrived. She then gave her check for $6,131.92, the odd amount being for the accrued interest on the bonds, and the president the same day gave her a receipt for the bonds kept at the bank for safe-keeping. She asked to see them but was informed he was then too busy to get them out for her. It later develops that he had several months earlier withdrawn from her account on a debit slip $6,920.49, and he now says he placed it in the escrow account which was used to take out bad notes and to meet the indebtedness of the bank, large amounts of which were referred to as the Maytag notes, the Woolsey notes and the Bly notes. The check she gave was in fact never entered on her account, although it was later marked paid. The records showed the earlier withdrawal from her account of this larger amount. The evidence in this case shows further concerning the funds reaching the hands of the receiver that there were cash and collections amounting to $53,000, which, with the $25,000 of notes on hand, made the total assets between $75,000 and $80,000, not including the $10,000 fidelity bond and the stockholders' double liability.

If this item is a trust fund the reasons given above in the Cheney case will apply with equal force as to it not reaching the hands of the receiver. But the trial court did not expressly find it to be a trust fund, and it appears to us from the evidence to lack the necessary element of being actually set apart and intrusted to the bank for a specific purpose. It was originally a deposit, but when the check was given the funds were not there to meet it, having been misappropriated earlier. Both the check and the receipt definitely described the bond, but the bonds were never procured.

"A claim against the receiver of a bank cannot be declared a trust fund where the claim arises out of the wrongful acts of the bank's cashier by which the money of the claimant was deposited in the bank in an account belonging to the bank and all the funds in that account had been dissipated at the time the receiver was appointed." (*City of Spring Hill v. Paxton, Receiver,* 115 Kan. 412, syl. ¶ 3, 223 Pac. 283. See, also, *Miller v. Viola State Bank,* 121 Kan. 193, 246 Pac. 517.)

No. 30,463 is an action brought and later an appeal taken by John Scholfield, executor of the estate of James Scholfield, deceased, to obtain a preference judgment on $9,000 of fourth Liberty loan bonds left for safe-keeping at the bank, which were taken and sold by an officer of the bank and the proceeds placed in the escrow account, as above described. Originally there were $9,500 of such bonds so placed for safe-keeping, but $500 of bonds were withdrawn and two installments of interest were collected from the government and paid to the owner by the bank.

The following additional items of evidence appear in the record in this case not noted in the former cases, viz., that there remained in the escrow account when the bank closed, as shown by the books of the bank, the sum of $8,114.47, and the copies of three daily blotters are given showing several general debits in large amounts and several notes paid—one of them shown to have been shortly after bank examiners had been there. The evidence concerning the use of the escrow account to the effect that it was simply a channel through which the misappropriated and embezzled funds passed in the payment of bad notes and bank indebtedness makes the record balance therein of little value and insufficient proof of indentification of any fund passing through it or of the balance remaining therein.

The bonds were left at the bank on November 9, 1928, and receipt given by the bank for them that day. The plaintiff saw them at the bank on May 16, 1929, when he withdrew $500 from them. The bank closed May 1, 1930. The escrow account was opened December 17, 1928, and continued as an active account until the bank closed. There is no question under the authorities above cited that the plaintiff's bonds were a trust fund and the proceeds of them by embezzlement reached the bank and increased the funds thereof, but there is an entire lack of evidence to show that these funds ever reached the hands of the receiver, and therefore the plaintiff was not entitled to a preferred claim, but only a common claim as allowed by the trial court.

No. 30,523 is an action brought and later an appeal taken by E. J. Rollings to obtain a preference judgment on three items, one for $9,000 and the other two for $10,000 each. The first is for a loan of $10,000 made by the plaintiff at the request of the bank in May, 1924, to Ray Duboc, which was made payable at the bank and amply secured by collateral and the note turned over to the plaintiff.

This note was renewed every six months and interest paid thereon regularly until May 29, 1928, when Duboc paid $1,000 on the principal and the note was then renewed for $9,000 and given to the plaintiff. Thereafter the renewal of the note for $9,000 was made every six months until the bank closed, but they were all forgeries and not genuine. Duboc during this time had been reducing the principal from time to time and the bank had been keeping in the bank the genuine note for reduced amount as was given by Duboc, and when the bank closed he had paid $5,000 more on the note and it was reduced to a genuine note of $4,000 still due, which was found among the papers in the bank. The proceeds of this note went into the bank in some form. It is not clear into what form they did go, and the records do not make any mention whatever of them. The plaintiff claims this $9,000 is a trust fund *ex maleficio,* as is described and approved in the case of *First Nat'l Bank v. Farmers State Bank,* 120 Kan. 706, 244 Pac. 1039. At any rate it must be at this time held to be a trust fund.

The other two items of $10,000 each are claimed by plaintiff by virtue of two receipts which he holds that were issued by the bank to him, one on January 20, 1930, for $10,000 in automobile payment notes for collection and credit and placing such funds into municipal bonds as fast as collections amounted to $1,000. The other receipt is dated three days later, given for $10,000 in bonds for sale and purchase of notes. The court in this case rendered a lengthy opinion in which it concluded there was confusion as to these receipts and that they both have reference to one transaction, and there is sufficient doubt in the matter, as shown by the evidence before us, to justify such a finding, and the court finds and concludes that it is a $10,000 item of securities turned over to the bank by the plaintiff for which he never received any return whatever in money, notes or bonds. The evidence is also confusing, and the court so finds, as to what became of the funds derived from these notes and bonds. None of them were found in the bank at the time it closed. The proceeds were traced in some instances to the bank from the institutions purchasing the same or the party paying the same, and the court concludes that it is unable to tell into which fund the proceeds went when they reached the bank, whether in the general fund, the escrow account or were embezzled by an officer of the bank. In this connection it is further shown by the evidence that the amount in

the escrow account on April 19, 1930, which was only a few days before the bank closed, was only $672.01.

The court held the plaintiff was entitled to a common claim against the receiver for $19,000, but not entitled to a preference. In this we concur, approving the finding of the court as to the amount and the conclusion that the claim for preference was properly denied. The trial court further directed on the strength of the evidence that the plaintiff herein, E. J. Rollings, had been a director of the bank since the year 1927 and had signed the reports and statements made by the bank regularly and those made shortly before the closing of the bank, which statements show the situation as to the assets and liabilities widely different from that found at the time the receiver took charge shortly thereafter; that the allowance of a common claim to the plaintiff against the receiver be upon the express condition that. payment thereof be postponed until all other creditors of the bank are paid in full. This is in line with well-recognized authority in this state and elsewhere.

"The claims of officers whose mismanagement has occasioned the insolvency of the bank are postponed to those of other creditors." (7 C. J. 751.)

"For several years before a bank failed, the published reports of its financial condition, required by R. S. 9-121, omitted from the statement of liabilities a liability to the directors as individuals, in a sum equal to two-fifths of the bank's capital. *Held,* that in the distribution of assets by the receiver among creditors, payment of the claim of the director-creditors should be postponed until the claims of depositors and other creditors, for whose benefit the statute was enacted, have been satisfied." (*Mulligan v. Emmett State Bank,* 124 Kan. 699, syl., 261 Pac. 567. See, also, *Elliott v. Farmers' Bank of Philippi,* 61 W. Va. 641.)

No. 30,525 is an action brought by John Balocca, doing business under the name of Balocca Candy Company, to recover $1,826.88 for deposits made by him in the Peoples State Bank at Fort Scott on the four days immediately before the closing of the bank, namely, April 28, 29, 30 and May 1, 1930, the bank closing on the evening of May 1, 1930. The plaintiff alleges that these amounts were deposited by him in the course of general business with the bank and that they were impressed with a trust for the reason that the plaintiff had been defrauded; that they are a trust fund in the hands of the receiver, and the plaintiff is entitled to have them returned as a preferred debt over claims of general creditors of the bank upon the assets thereof in the hands of the receiver; that the plaintiff has been defrauded by the action of the bank and its officers in that the bank received these deposits when it was irretrievably and hopelessly

insolvent and when its officers knew that it was insolvent and unable to meet its obligations and indebtedness, and that he has demanded the payment of the same by the receiver as a preferred claim and the receiver has refused to so recognize it. The answer is a general denial as to the liability. The court, after hearing the evidence, rendered judgment in favor of the plaintiff for the full amount of the deposit and made it a common claim against the assets of the bank in the hands of the receiver, but refused to make it a preferred claim. From this ruling the plaintiff appeals, alleging error in the denial of the court of his claim for preference.

The evidence in the case shows this amount of deposit on these four days after deducting the checks issued by the plaintiff during those four days, thus reducing the amount deposited each day, also deducting one or two checks upon which payment was later refused and also some checks deposited the last day on which payment was purposely refused because of the failure of the bank, so that there exists no question as to the net amount actually deposited in cash, checks and drafts which were ultimately converted into cash. Some of these foreign checks were collected by the Merchants Bank at Kansas City and credited to the exchange account of the Peoples State Bank. The balance of the Peoples State Bank in the Merchants Bank on April 26, 1930, was $4,472.56; April 28, $1,752.66; April 29, $2,542.52 overdraft; April 30, $5,552.14 overdraft; May 1, $2,510.31; May 2, $15,212.63; May 3, $14,195.83; May 5, $14,084.27; and May 6, $13,593.59. The testimony of the assistant receiver, made after a thorough examination of the assets of the bank, is that the bank was hopelessly insolvent during the entire month of April.

The Merchants Bank of Kansas City held two notes of the Peoples State Bank at the time it closed its doors; one was for $12,500, and the other for $20,000. It also held collateral security on the first note in the sum of notes to the face value of $15,020, of which amount it was discovered there was a $5,000 note that was forged, leaving genuine notes in the sum of $10,020. As collateral for the second note it held notes to the amount of $46,210.27, of which amount it was later discovered that $15,500 of these notes were forged, leaving genuine collateral notes amounting to $30,-710.27, thus making the aggregate collateral of genuine notes held by the Merchants Bank as security for these two notes the sum of $40,730.27 to secure the total indebtedness to that bank of

$32,500. The evidence shows that because of this indebtedness the Merchants Bank used all of its balance at the time of the closing of the bank, and they collected or procured thereafter and applied the same on the two notes; and the evidence shows that in September following the failure of the bank in May the receiver remitted to the Merchants Bank the sum of $11,109.91 cash to pay off these two notes and to recover the collateral security that was held by the Merchants Bank. There is no specific evidence as to the value of the uncollected notes thus returned except the assistant receiver's estimate of the value of all uncollected assets as being approximately $25,000, which is included in the estimate of the total assets of the bank of $75,000 or $80,000.

The evidence further shows that the liabilities of the bank when it closed on May 1 were $497,508.41 and that this approximate amount of liability ran about the same during the month of April. It also further shows that there was cash on hand in the bank when it closed in the sum of $12,311.25, and the deposits at that time, as shown by the books, were about $419,000; that on January 23, 1930, the firm of Lotterer & Sons furniture store drew a check against its account in the Peoples State Bank for the sum of $2,600, which check the bank refused to cash on that date when presented with that request, but offered to give a check or draft in lieu of cash.

The appellant insists that the deposits made by him so shortly before the failure of the bank when it was hopelessly insolvent were trust funds when received under those conditions, and that they went to the receiver and augmented the assets in the hands of the receiver and therefore should have been given a preference over the claims of the general creditors. Appellant cites *Washbon v. Bank*, 87 Kan. 698, 125 Pac. 17, and *Tire & Rubber Co. v. Bank*, 109 Kan. 772, 204 Pac. 992, to show that a credit given for the amount of a check is equivalent to and should be treated as a payment of the check, and that it is the same as if the money had been paid over the counter on the check and immediately paid back. In the same connection the rule stated in 7 C. J. 730 is urged where the acceptance of deposits when the bank is hopelessly insolvent is a fraud and the fund deposited can be followed and recovered if it can be identified and has augmented the assets in the receiver's hands. These are the generally accepted views upon this question, subject to the specific requirements the rules themselves contain and a few modifications perhaps not pertinent here. Appellant

strongly relies upon the decision in the case of *Kime v. Ladd,* 112 Kan. 603, 211 Pac. 628, the syllabus of which is as follows:

"A bank is guilty of fraud on a general depositor in accepting his deposit after the bank has become hopelessly insolvent and has committed an act of insolvency, and the depositor may recover from the receiver of the bank to the extent the deposit augmented the funds coming into the hands of the receiver." (Syl.)

The requirements there definitely named are the commission of an act of insolvency and the augmenting of the funds coming into the hands of the receiver. A special reason given for the deposits in this case augmenting the funds coming into the hands of the receiver is the very short time before the closing of the bank. Just as the plaintiff on each of the four days checked out certain amounts from his account so others with equal opportunities may have withdrawn far more than plaintiff deposited during those four closing days. Again the facts show the foreign checks were sent to the Merchants Bank for collection and were collected and placed to the credit of the Peoples State Bank and by the Merchants Bank applied on the two large notes it held and the large exchange overdraft the day before the bank closed. The funds from these foreign checks never did reach the receiver, but on the contrary he had to send more than $11,000 in cash to redeem the collateral pledged upon these notes.

"Before a trust can be declared against assets in the hands of a receiver of a bank, it must be shown that the assets received by him were increased by the funds sought to be declared trust funds; it is not enough to show that the assets of the bank were increased or that the money received by the bank was used in reducing its indebtedness." (*Honer v. State Bank,* 114 Kan. 123, syl., 216 Pac. 822.)

In the case of *State Bank v. State Bank,* 114 Kan. 463, 218 Pac. 1000, where two banks effected their clearing for the day by one giving a draft to the other and before the draft was paid the bank giving it failed, it was held that the relation between them "was that of debtor and creditor and not that of principal and agent or trustee and *cestui que trust,* and that plaintiff is not entitled to a preference."

The case of *First Nat'l Bank v. Farmers State Bank,* 120 Kan. 706, 244 Pac. 1039, was between two banks and the failure of the clearance draft to be paid because the bank went into the hands of a receiver, and it was there said:

"Where the officers and employees of the defendant bank who effected the daily clearance of checks and settlement of accounts with plaintiff banks and issued the customary drafts for the balances due from it to plaintiffs did not know that defendant was insolvent, the fact that the bank was actually insolvent and passed into the hands of a receiver and that the drafts were dishonored by the drawee did not give rise to preferred claims in favor of the plaintiffs against the assets of the defendant bank." (Syl. ¶ 2.)

The case of *First Nat'l Bank v. Farmers State Bank*, 119 Kan. 198, 237 Pac. 652, was where the plaintiff bank assisted another bank, which was short of cash, to meet current obligations and to carry on its banking business, and in return the cashier's check was given with the understanding that the check would not be sent through the clearing bank for four or five days. The bank remained open only one day after the check was given, and in fact had been in a state of insolvency for some time before the transaction, but this fact was not known to the other bank. The defendant bank and its assets passed into the hands of a receiver and the plaintiff bank made a claim that the money furnished constituted a trust fund and entitled it to a preference over general creditors, and it was held that the "transaction did not create a trust relationship nor give the plaintiff bank a right to the preference claimed."

A still more recent case, *Colorado & S. Rly. Co. v. Docking*, 124 Kan. 48, 257 Pac. 743, is one in which the collection was made and paid by cashier's check, but before the check was cashed the collecting bank failed, and it was held the relation existing was that of debtor and creditor and that the item was not a trust fund; and it was further held:

"Where the above transaction took place while the bank was in an insolvent condition, being one of many other similar transactions taking place at the same time and as a usual and ordinary line of banking business, it is not such a fraudulent transaction as to make the collected item a trust fund, even if the officers of the bank knew of its insolvent condition." (Syl. ¶ 2. See, also, *Massey-Harris Harvester Co. v. First State Bank*, 122 Kan. 483, 252 Pac. 247; and *Schoen v. Johnson*, 134 Kan. 612, 7 P. 2d 117.)

There is nothing in the evidence in this case to show that the plaintiff was the only substantial depositor of the Peoples State Bank on these four last days of its existence, or that his deposits and his withdrawals especially ever augmented the assets of the bank so that his deposits could be singled out from other deposits made on that day and those four days so as to have entitled him to a preference above and beyond others depositing during that time

or during even earlier dates, unless the situation was changed as to the earlier time.

As to the disposition of funds and to assist in determining whether or not these funds can be considered as having augmented the assets of the bank and increased those reaching the hands of the receiver, the able discussion of this matter in the case of *Investment Co. v. Bank,* 98 Kan. 412, 158 Pac. 68, may well be referred to again, as it has been above, in connection with bonds and other securities, and also the following language used as to such matters in the case of *Bank v. Bank,* 62 Kan. 788, 64 Pac. 634:

"The use of the money so collected for the mere payment of the indebtedness of the trustee is not to be regarded as an enlargement and betterment of the trustee's estate; but the plan of exchanging checks and making a settlement of the day's business which was adopted by the banks in the present case is not to be regarded as a mere payment of indebtedness." (Syl. ¶ 3.)

The general relation of a bank and one of its depositors is that of debtor and creditor (*Eply v. Bank,* 104 Kan. 489, 180 Pac. 187), and the facts and circumstances surrounding their business transactions must show that an entirely different situation existed between them before that relationship should be changed. None of the elements necessary to constitute the relation of trustee and *cestui que trust* is shown here; neither is it shown that the deposits augmented the funds reaching the receiver. The refusal of the bank in January, 1930, to cash a check for $2,600, at the request of one of its depositors, cannot under the circumstances of this case be regarded as committing an act of insolvency. Much of what was said in the earlier part of this opinion, and many of the authorities there cited in connection with the trust funds for the purchase of bonds and funds received from the sale of bonds augmenting the assets of the bank and later increasing the funds reaching the hands of the receiver, are applicable here.

We conclude it was not error for the trial court to deny the claim of the appellant for a preference over the general creditors, referring again to the appropriate language found in the opinion of Justice Mason in the case of *Investment Co. v. Bank,* supra, "Such preference as he is given must be based upon the equities of the case, considering the rights of all the parties affected." (p. 416.)

No. 30,522 is an action brought by Frank Cunningham, doing business under the name of Cunningham Investment Company, to obtain a preference judgment against the funds in the hands of the

receiver for $1,158.38 for deposits made by him in the Peoples State Bank on April 29 and 30 and May 1, 1930, and three cashier's checks purchased on April 26, 1930, for $150, and one check given the bank on April 30, 1930, for payment of a $24 note through another bank. The note was never paid. Payment was refused on the cashier's checks after the bank failed and the balance of the $1,158.38 was deposited and consisted of cash, post-office money orders and local and foreign checks. The deposit on May 1 was made about fifteen minutes before three p. m., when the bank closed its doors for all time. The trial court segregated the $24 item and rendered judgment for plaintiff for $1,134.38, making it a common claim and denying a preference judgment. The cash and local checks deposited amounted to more than $600, left in the bank by the appellant, and more than $300 foreign checks went to the credit of the bank in its exchange account with the Merchants Bank.

The general allegations of the petition, the defense and the evidence were substantially the same as in the Balocca case, supra, and the plaintiff appeals, assigning error in denying his claim of preference. We observe no distinction between this case and the Balocca case, and find no error in denying the preference.

No. 30,367 is an action brought by the Sisters of Mercy, a corporation, to obtain a preference judgment against the receiver of the Peoples State Bank for three deposits made by them in that bank on April 28, April 30 and May 1, 1930, aggregating $1,512.82. All the items of the deposits were foreign checks, and the record shows they were sent to the Merchants Bank in Kansas City and were paid and credit was given to the Peoples State Bank for each and every check so deposited.

It is shown in this case that the Peoples State Bank was a one-man institution, and that after the bank was closed on May 1, 1930, there were found on the desk of the president unpaid checks, which fact is urged as showing the bank had committed an act of insolvency. It is further urged that the foreign checks deposited May 1 were not paid or credit given by the Merchants Bank at Kansas City until the receiver was in charge, and therefore that credit was necessarily given to the receiver and that augmented the assets coming into his hands. If this be the rule, would it not in the same way apply to all collections made by the receiver on notes as against the value of the notes themselves as assets in his hands from the time of the closing of the bank? We do not find it neces-

sary to reverse or modify the ruling in the Kime case, as counsel for appellant claims, unless this is declared to be a preferred claim. That case fully protects the conclusion reached by the requirements of committing an act of insolvency and showing an increase in the funds that reach the hands of the receiver. In this case, as in the preceding ones concerning deposits, the only question involved is whether the appellant is entitled to a preference above that of the general creditors.

The general allegations, the defense and the evidence affecting the bank generally were the same as recited in the former cases involving deposits. The additional authorities cited do not, in our opinion, change the rule so as to make this a trust fund and traceable as an increase reaching the hands of the receiver. The two recent decisions cited by appellant, *Peoples State Bank v. Burlington State Bank,* 128 Kan. 274, 277 Pac. 39, and *Duncan v. Farmers State Bank,* 128 Kan. 591, 278 Pac. 763, do not in our opinion change or modify the requirements for a preference or the rule as to a deposit not ordinarily being a trust fund. The syllabus in the latter case is as follows:

"In an action by a depositor against the receiver of an insolvent bank to determine the question of preference, the record considered and *held,* the relationship established by the plaintiff and the bank was that of debtor and creditor and not that of principal and agent, nor trustees and *cestui que trust."*

The second paragraph of the syllabus in the case of *Kirby v. Wait,* 120 Kan. 400, 243 Pac. 1058, cited by appellant, is as follows:

"Money placed in a bank as a trust fund to pay a certain debt cannot, after the failure of the bank and the appointment of a receiver for it, be declared a preferred claim against the assets of the bank unless it is shown that the 'assets which reached the hands of the receiver were larger by reason of such transaction than they otherwise would have been.' "

In this case it is shown that during those four days the Peoples State Bank did business its deposits amounted to more than $80,000, and the probability is that other deposits contained foreign checks, as did the deposits of the appellant. On May 1 it took in more than $20,000 in deposits, which was more than the cash on hand when it closed. The authorities cited in the earlier part of this opinion have equal application to the question involved.

No. 30,702 is an action brought by Thomas Bryden, doing business under the name and style of Bryden Auto Supply Co., to obtain a preference judgment against the receiver of the Peoples State Bank for five deposits on April 25, 26, 28, 29 and 30, 1930, in the

aggregate sum of $3,767.93, which consisted of currency and checks, both domestic and foreign, the domestic being entered as cash at the home bank, and the foreign being collected by the Merchants Bank of Kansas City, which gave the home bank credit therefor. It is shown in this case that at the time the bank closed the plaintiff had on deposit, in the general balance therein, the sum of $7,081.13. All the foreign checks deposited have been paid in full and credited by the Merchants Bank. It is further shown in this case that the loans and discounts on May 1, 1930, when the bank closed, amounted to $339,156.67, and of this amount there was a shortage in the account of about $79,000 where the notes or other evidences of indebtedness could not be found. It is further shown that the real estate was estimated to be worth $2,500 and the furniture and fixtures $500, and as an item under resources was the safety-deposit vault, carried at $6,035.59. Including these items, the assistant receiver estimated the total assets of the bank as being between $85,000 and $95,000. A comparison of the deposits and amounts drawn out of the bank is shown in this case on the last few days of the business career of this bank as follows: April 25, checks, $22,518.80, deposits, $17,578.44; April 26, checks, $16,603.25, deposits, $10,907.34; April 28, checks, $13,285.10, deposits, $18,529.16; April 30, checks, $11,150.45; May 1, checks, $17,381.05. That on January 23, 1930, when the bank refused to cash the $2,600 check of one of its depositors, this bank had a balance in the Commerce Trust Company of $4,304.38, in the Merchants Bank of $25,299.46, in the National Reserve Bank of $76.75 and cash on hand $27,239.56.

The only question involved in this case is like that in the preceding deposit cases—the right to a preference judgment. The trial court gave plaintiff judgment for a common claim, denying a preference, and he appeals alleging error in that ruling. Appellant cites in addition to the citations in the foregoing cases the decision in the case of *Federal Reserve Bank v. Omaha Nat. Bank,* 45 F. 2d 511, where some exceedingly strong and forceful principles are enunciated in favor of the theory of the appellant, but the facts in the two cases are so dissimilar that the same rules are hardly applicable to both cases. There three directors of the hopelessly insolvent bank were directors and officers in another bank which kept a large deposit with the insolvent bank, and during the three or four days prior to the closing of its doors, while in conference with the bank examiner on that subject, the failing bank transferred by wire

through a common correspondent bank to the other bank more than $80,000, and the court set aside this self-arranged preference as a fraud upon the general depositors—very different from the fraud in this case of receiving deposits when the bank was hopelessly insolvent and the officers of the bank knew it. The same fraud was perpetrated upon all the customers who made deposits in this bank on the same day or days as this plaintiff did. There is not a word of testimony in these deposit cases that shows a peculiar or different situation as to these plaintiffs from the fraud upon all the other depositors, as there was in the fraudulent transactions in the first four cases decided in this opinion, where it consisted of misappropriating bonds left there for safe-keeping or money left specially for particular investments. Here the fraud practiced upon these plaintiffs is no different, as far as the evidence shows, from that imposed upon all others making deposits on the same days, and a preference among such depositors under these circumstances would be unfair and inequitable.

No. 30,526 is an action brought by G. P. Hutchison against the receiver of the Peoples State Bank to obtain a preference judgment for deposits made by plaintiff in that bank on April 21, 23 and 29, 1930, amounting to $961.46. Part of these deposits were cash and local checks which were equivalent to cash, and the foreign checks were collected by the Merchants Bank before the Peoples Bank failed on May 1. It is urged that while this collection was used to pay an obligation of the Peoples Bank due the Merchants Bank, yet the Peoples Bank later received the collateral pledged to the Merchants Bank, which the record shows to have been about $21,000 of genuine notes. The allegations, defense, evidence and ruling in this case were substantially the same as in the preceding deposit cases and the same question is involved, viz., a claim of preference because of the bank receiving these deposits when it was hopelessly insolvent, which condition was known to its officers at the time, and that the deposits augmented the assets of the bank coming into the hands of the receiver. As stated earlier herein, the rights of the appellant under the decisions upon which he relies are dependent not only on the alleged fraudulent act and the knowledge of the officers of the hopelessly insolvent condition of the bank at the time of receiving the deposits, but also the need of the commission of an act of insolvency and a showing that the augmented assets reached the hands of the receiver. We think appellant has failed in these

respects and therefore is not entitled to a preference over and above the general creditors.

No. 30,521 is an action brought by the General Contract Purchase Corporation against the receiver of the Peoples State Bank to obtain a preference judgment for four deposits made in the bank on April 8, 12, 17 and 28, 1930, of money belonging to this plaintiff, amounting to $527.83, but which had been deposited in the account of the Four-State Maytag Company, which was making the collections for the plaintiff company under contract and for a commission—the president of the bank being the managing officer of the collecting company. At the time of the bank failure the Four-State Maytag Company had on deposit in the bank more than the amount here involved, but the receiver appropriated it to pay a note of that company held by the bank. Judgment was rendered for the plaintiff for a common claim, and plaintiff appeals on account of the refusal of the trial court to grant a preference. The pleadings and facts in this case are substantially the same as in the preceding deposit cases and the authorities governing in those cases we think control in this case, to the effect that the deposit is not under the facts and circumstances a trust fund and has not augmented the assets of the insolvent bank coming into the hands of the receiver. Hence it is not a trust fund nor equitably entitled to a preference over the other depositors and creditors of the bank.

We find no error in the denial by the trial court of the preference judgment claimed by the appellant in each of the foregoing ten cases, and therefore the judgment rendered in each of the cases here considered is affirmed.