No. 30,690.

THE SECURITY NATIONAL BANK, *Appellant*, v. W. H. PAYNE, W. H. PAYNE GRAIN COMPANY, and A. R. DOOP, *Appellees.*

(15 P. 2d 410.)

Opinion filed November 5, 1932.

*Chester Stevens* and *Frank Clampitt*, both of Independence, for the appellant.

*W. N. Banks, O. L. O'Brien* and *Walter L. McVey*, all of Independence, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action by the holder of a check against the maker and indorser. The trial court made findings of fact and rendered judgment for defendants. Plaintiff has appealed.

Briefly the material facts may be stated as follows: On March 13, 1930, and for some years prior thereto, the Commercial National Bank of Independence was a corporation organized under the laws of the United States and doing a general banking business at Independence, Kan. After the close of business on that day, on demand of a bank examiner, who was present, the board of directors of the bank ordered the bank closed and posted a notice to that effect on the door, and the bank examiner took charge of the bank. On the next day, March 14, the comptroller of currency appointed a receiver. He qualified promptly and took charge of the bank and its assets and proceeded to close up its affairs. On August 30, 1930, the receiver duly sold all the assets of the bank then in his hands to the plaintiff, the Security National Bank, which sale was duly approved by the federal court.

The defendant, W. H. Payne, under the name "W. H. Payne Grain Company," was engaged in the grain business at Independence and did his banking business with the Commercial National Bank. On March 13, 1930, he was indebted to the bank on two promissory notes, one for $2,000, dated December 18, 1929, due on demand, and the other for $702.40, dated March 4, 1930, due in fifteen days. On the morning of that day he had $604.94 to his credit in his general checking account at the bank. On that day he made a deposit of $1,133.05, and the bank paid his checks amounting to $557, leaving a balance to his credit in his account at the close of business on that day of $1,180.99. After the receiver took charge of the bank he charged Payne's account with this balance and credited it on the $2,000 note above mentioned.

On March 13, 1930, the defendant, A. R. Doop, who had purchased two cars of feed from the W. H. Payne Grain Company, gave it in payment therefor his check for $934.77, drawn on the Citizens First National Bank of Independence, where he did his banking business. Payne deposited this check in the Commercial National Bank, the same being one of the items making up his deposit of $1,133.05, above mentioned. On March 14 Doop, having learned that the Commercial National Bank had closed, instructed the Citizens First National Bank not to pay the check he had given to Payne, and that bank followed his instructions when the check was presented to it for payment by the receiver of the Commercial National Bank. In receiving for deposit checks drawn on other

banks the Commercial National Bank reserved the right to charge them back to the depositor upon nonpayment. A statement to that effect was printed in the pass book it had issued to Payne. It did not charge the Doop check back to Payne. This check, and the two notes above mentioned, with the credit of $1,180.99 indorsed on one of them, were among the assets of the Commercial National Bank which its receiver. sold to plaintiff. The sale was at a price which enabled the receiver to pay depositors of the Commercial National Bank of less than $300 in full, and to pay other depositors, not stockholders in plaintiff bank, 74 per cent of their deposits.

Among other things the court found that the Commercial National Bank was insolvent on March 13, at the time Payne deposited the Doop check in the bank, and that the officers of the bank knew the bank was insolvent, while neither Payne nor Doop had such knowledge or any notice or suspicion thereof.

The court concluded, as a matter of law, that the acceptance of the deposit of the Doop check made by Payne was fraudulent under the circumstances, and that the Commercial National Bank acquired no title or ownership in the check; that the title to the check remained in Payne, and that plaintiff acquired no title, right, or interest in the check by virtue of purchasing it from the receiver of the Commercial National Bank. The court rendered judgment for defendants and that plaintiff surrender the check to Payne.

We are unable to find any substantial evidence in the record to support the finding that the bank was insolvent when Payne deposited the check in question, which was about 1:30 p. m., March 13. Appellees cite our statute (R. S. 9-133), which provides that a bank shall be deemed insolvent, first, when the actual cash market value of its assets is insufficient to pay its liabilities; second, when it is unable to meet the demands of its creditors in the usual and customary manner; and, third, when it shall fail to make good its reserve as required by law. There is no evidence that the Commercial National Bank was unable to meet the demands of its creditors in the usual customary manner, or that it had failed to make good its reserve, as required by law. On the other hand, the evidence is, and the court found, that "the bank received deposits, paid checks, and carried on a banking business" until its regular closing time at three o'clock on that day. The only evidence that the actual cash market value of its assets on March 13 was insufficient to pay its liabilities was the fact that when the receiver

sold the assets then in his hands to plaintiff, on August 30, the funds which came into his hands were insufficient to pay in full the creditors of the bank. Clearly that is not sufficient. It is not even shown that at the sale the assets sold brought all they were worth, and that assets previously disposed of by the receiver had brought their full actual cash value. Neither is it shown that the value on August 30 of the assets sold was the same as it was on March 13. There is a total lack of evidence as to the actual cash market value of the assets of the bank as of the date of March 13. It is seldom that a receiver for a closed bank can get as much out of its assets as the bank could have received if it had remained a going concern. Counsel for appellant argues that our state statute (R. S. 9-133) is a statutory rule for determining insolvency of banks, and from the nature of things can apply only to state banks; that it has no application to national banks which are organized, conducted and liquidated under federal law. The point is well taken. (*Easton v. Iowa*, 188 U. S. 220.) No federal statute is cited to us under which it could be held, under the evidence in this case, that the bank was insolvent earlier than the time the comptroller of the currency declared it insolvent and appointed a receiver, which was March 14. But, passing this thought and conceding for the moment there was some evidence to sustain the finding of the court that the bank was insolvent when the deposit was made, there is an absence of any evidence to support the finding of the court that the officers of the bank knew it to be insolvent. The only witness who testified on that point was the cashier. He testified that about four o'clock p. m., March 13, the bank examiner posted the notice on the door of the bank and stated the reason was irregularities; that up to that time he did not know the bank was in trouble, and had no notice or intimation of it. There may be, of course, irregularities in the bank even sufficient to break it concerning which some, or most, of the officers have no knowledge. (*State v. Powell,* 120 Kan. 772, 245 Pac. 128.)

Appellant complains of the court's conclusion of law that no title to the check in question passed to the bank predicated on the finding that the bank was insolvent and its officers knew that fact at the time the deposit in question was made, and argues that, even if the findings of the court were sustained by evidence, its conclusion of law does not necessarily follow and is erroneous under the facts in this case. The point is well taken. In support of the conclusion of

law reached by the trial court appellee cites *Kime v. Ladd, Receiver,* 112 Kan. 603, 211 Pac. 628. That case was relied upon by plaintiffs in several of the cases which were consolidated in this court and decided under the title of *Cheney v. Johnson,* 135 Kan. 521, 533, 11 P. 2d 709. It is clear under the facts before us that this case does not fall within the rule with its qualifications there stated.

Even if the bank were insolvent, and its officers knew it at the time the deposits in question were made, it is going too far in this case to say that the title to the check did not pass to the bank. When one who is a customer of the bank makes a deposit therein of a check drawn on another bank, and receives credit therefor upon his checking account, the relation between the depositor and the bank, in so far as the check is concerned, is that of an indorser and indorsee; the relation between them, in so far as the credit the depositor received on his account is concerned, is that of debtor and creditor. The bank is the owner of the check and may sue the maker and indorser thereon notwithstanding the fact that, as between it and the depositor, it reserved the right to charge the amount of the check to his account in the event it was dishonored. (*Scott v. McIntyre Co.,* 93 Kan. 508, 144 Pac. 1002, recently cited with approval by the supreme court of Iowa in *Andrew v. Security Trust & Saving Bank,* 243 N. W. 542.) The rule is the same in the federal courts. (*Douglas v. Fed. Reserve Bank,* 271 U. S. 489, and cases there cited.) If, under any view of the evidence, the transaction could be held fraudulent as to Payne, the question arises, How is he hurt or damaged by such fraud? He has received credit for the full amount of the check, first, upon his account, and later upon his $2,000 note. He was not injured in any way. Neither was the maker of the check, A. R. Doop, damaged in any way. He received the merchandise for which the·check was given. There is no contention that the check was obtained from him ·fraudulently by anybody, or that it was without consideration in whole or in part. If any fraud was practiced, which fact is not shown by this record, no damages resulted therefrom to either of the defendants. "Fraud without damage or injury is not remediable." (26 C. J. 1167.)

From what has been said it necessarily follows that the judgment of the court below must be reversed, with directions to enter judgment for plaintiff. It is so ordered.